**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RACHEL SKOLNICK, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-0326-MRP |
| Plaintiff, | CLASS ACTION |
| v. | |
| EVOLUTION AB (PUBL), MARIN CARLESUND, and JACOB KAPLAN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**THE FLORIDA SAFETY FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF**
**AND APPROVAL OF SELECTION OF COUNSEL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ....................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................3

III.   ARGUMENT ...........................................................................................................5

     A.     The Florida Safety Funds Should Be Appointed Lead Plaintiff .............................5

          1.     The PSLRA's Standard for Appointing Lead Plaintiff ...............................5

          2.     The Florida Safety Funds Have Timely Moved for Appointment as Lead Plaintiff ....................................................................................................7

          3.     The Florida Safety Funds Believe They Have the Largest Financial Interest in the Relief Sought by the Class ....................................................7

          4.     The Florida Safety Funds Satisfy Rule 23's Typicality and Adequacy Requirements .....................................................................................8

               a.     The Florida Safety Funds' Claims Are Typical of Those of the Class ..................................................................................................8

               b.     The Florida Safety Funds Will Fairly and Adequately Protect the Interests of the Class ....................................................................9

                c.     The Florida Safety Funds Are Ideal Plaintiffs to Represent the Class ................................................................................................10

     B.     The Florida Safety Funds' Selection of Counsel Should Be Approved ...............................................................................................................12

IV.   CONCLUSION .....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Elkin v. Walter Inv. Mgmt. Corp.*,
    No. CV 17-2025, 2017 WL 2547292 (E.D. Pa. June 13, 2017) ................................. 7, 8, 9, 10

*Gaer v. Educ. Mgmt. Corp.*,
    No. 10-cv-1061, 2010 WL 4687791 (W.D. Pa. Nov. 10, 2010)............................. 10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)................................................................................*passim*

*In re Gildan Activewear Inc. Sec. Litig.*,
    No. 1:08-cv-05048-HB, 2010 WL 11746218 (S.D.N.Y. Sept. 20, 2010) ............................... 14

*Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
    No. 12-cv-0993, 2012 WL 3597179 (M.D. Pa. Aug. 20, 2012)............................. 9

*Strougo v. Unisys Corp.*,
    No. 22-cv-4529, 2023 WL 4140822 (E.D. Pa. June 22, 2023)........................... 8, 12

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23(a)(4) ........................................................................ 9
Rule 23 of the Federal Rules of Civil Procedure ...............................................*passim*
Rule 23(a)..................................................................................... 8

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730.................... 10, 12

Proposed Lead Plaintiff the City of Hollywood Firefighters' Pension Fund ("Hollywood Fire") and the City of Coral Springs Police Officers' Pension Plan ("Coral Springs Police," and together with Hollywood Fire, the "Florida Safety Funds") respectfully submit this memorandum of law in support of their motion for: (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), on behalf of a class (the "Class") of persons (including entities) that, between February 14, 2019 and October 25, 2023 (both dates inclusive) (the "Class Period"), while in the United States, purchased or otherwise acquired American Depositary Shares ("ADSs," also commonly and interchangeably referred to as "American Depositary Receipts" or "ADRs") of Evolution AB ("Evolution" or the "Company") traded under the ticker symbol EVVTY on the U.S. Over-the-Counter Market (the "OTC Market"); (2) approval of their selection of Saxena White P.A. ("Saxena White") as Lead Counsel and Promisloff Law, P.C. ("Promisloff") as Liaison Counsel for the Class; and (3) the award of any such other and further relief as the Court may deem just and proper.

## I.   <u>INTRODUCTION</u>

This is a securities class action (the "Action") brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC") against Evolution and certain of its executive officers (collectively, "Defendants").

The PSLRA directs the Court to appoint as Lead Plaintiff the "most adequate plaintiff," *i.e.*, the movant that has demonstrated the "largest financial interest" in the litigation and also meets the typicality and adequacy prongs of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cendant Corp. Litig*., 264 F.3d 201, 263 (3d Cir. 2001)

(describing the PSLRA's process for selecting a lead plaintiff).  The Florida Safety Funds—sophisticated public pension funds that together oversee more than $650 million in assets—respectfully submit that they are the presumptively "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  The Florida Safety Funds' motion is timely, and their loss of $719,223 as calculated on a last-in-first-out ("LIFO") basis on their transactions in Evolution ADRs during the Class Period represents the largest known financial interest in the relief sought by the Class.[1]

The Florida Safety Funds also readily satisfy the relevant requirements of Rule 23 because their claims are typical of those of the Class and because they will fairly and adequately represent the Class.  In addition, as institutional investors with significant experience representing absent investors in other securities class actions, the Florida Safety Funds are precisely the type of lead plaintiff envisioned by Congress when enacting the PSLRA: sophisticated institutional investors that are committed to the vigorous prosecution of the claims in this action, understand the obligations and responsibilities of a lead plaintiff, and have the incentive, ability, and experience to effectively oversee counsel and supervise the prosecution of this action in the best interests of the Class.

In addition, as set forth in greater detail in their Joint Declaration submitted herewith, the Florida Safety Funds fully understand the Lead Plaintiff's obligations under the PSLRA and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Action.  *See* Promisloff Decl., Ex. C.

---

[1]  The Florida Safety Funds' transactions in Evolution ADRs during the Class Period are set forth in their Certifications.  *See* Declaration of David M. Promisloff in Support of the Motion of the Florida Safety Funds for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Promisloff Decl."), Ex. A, filed concurrently herewith; *see also id.*, Ex. B (loss analysis).

The Florida Safety Funds have further demonstrated their adequacy by selecting Saxena White to serve as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class[.]").  Saxena White is a leading national law firm specializing in representing investors in securities and shareholder litigation, with substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this District and throughout the country.

Accordingly, the Florida Safety Funds respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## II.   STATEMENT OF FACTS

Evolution is an online gaming company that develops, produces, markets, licenses and runs online casinos for its customer base of online casino operators, platform providers, and land-based casinos in countries around the world.[2]

Throughout the Class Period, Defendants touted Evolution's increasing growth in its random number generator ("RNG") line of business, and in its global market segments.  Evolution assured investors that it "provides its content only to licensed operators" who were "subject to regulations."  Indeed, Evolution's risk disclosures in filings made with Swedish financial regulator Finansinspektionen and posted on its website warned that "[t]he development of laws and regulations relating to the supply of gaming services" was a "central risk factor," and that "in the event of legislation being interpreted in an unfavourable or unanticipated way, Evolution's conditions for growth, profitability, and the games that may be supplied could be changed."

---

[2] Evolution is headquartered in Sweden and conducts business in this District.

The Action alleges that, during the Class Period, Defendants made false and misleading statements regarding the compliance of Evolution customers with regulators and the financial condition of Evolution.  Specifically, the action alleges, among other things, that: (1) multiple Evolution customers across several countries were, or were deemed by regulators to be, unlicensed and/or in breach of the laws of those jurisdictions; (2) Evolution customers were the subject of regulatory enforcement in multiple jurisdictions, which, inconsistently with the risk disclosures, was neither unanticipated nor dependent on technical interpretation of legislation; and (3) Evolution's revenue growth in its RNG line of business and North American segment was slowing.

On January 24, 2022, an analytical report produced by analyst firm Alpha Generation Limited warned investors that a significant portion of Evolution's revenue "could be at risk due to future regulatory clampdowns," and Evolution was "exposed to revenues from . . . illegal gambling activities."  On this news, Evolution's ADR price fell $19.78 per ADR, or approximately 15%, to close at $115.00 per ADR on January 27, 2022.

On April 25, 2022, after the OTC Market closed, Australian gambling regulator announced that it had requested that internet providers block six Evolution customers' online gambling sites, which the regulator alleged were engaging in illegal gambling.  On this news, Evolution's ADR price fell $6.02 per ADR, or approximately 6%, to close at $90.71 per ADR on April 27, 2022.

On May 4, 2022, the Swedish Administrative Court upheld over $17 million in fines imposed on brands operated by an Evolution customer for breaches of Swedish online gambling regulations.  On this news, Evolution's ADR price fell $12.34 per ADR, or approximately 11%, to close at $101.09 per ADR on May 5, 2022.

On May 7, 2022, the press reported that gambling industry participants had lobbied the UK government against an overhaul of gambling laws in the United Kingdom, which represented a previously undisclosed material risk to the industry and Evolution's business.  On this news, Evolution's ADR price fell $14.84 per ADR, or approximately 15%, to close at $87.25 per ADR on May 11, 2022.

On April 27, 2023, Evolution reported financial results for the first quarter of 2023, revealing that its RNG segment did not grow and that the North America segment's growth had slowed.  On this news, Evolution's ADR price fell $10.94 per ADR, or approximately 8%, to close at $125.56 per ADR on May 2, 2023.

On October 26, 2023, Evolution reported financial results for the third quarter of 2023, revealing that its RNG and North America segments did not grow, and that Evolution was facing delays in opening new studios.  On this news, Evolution's ADR price fell $7.156 per ADR, or approximately 8%, to close at $86.795 per ADR on October 27, 2023.

As a result of Defendants' material misrepresentations and omissions, and the significant decline in the market value of the Company's ADRs, the Florida Safety Funds and the Class have suffered significant damages.

## III.  ARGUMENT

### A.  The Florida Safety Funds Should Be Appointed Lead Plaintiff

Hollywood Fire and Coral Spring Police respectfully submit that they should be appointed Lead Plaintiff because they filed the instant motion in a timely manner, have a substantial financial interest in this litigation, and satisfy the typicality and adequacy requirements of Rule 23.

#### 1.  The PSLRA's Standard for Appointing the Lead Plaintiff

The PSLRA establishes a straightforward, sequential procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws.  *See* 15 U.S.C.

§ 78u-4(a)(1)-(3)(B)(i).  First, the plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Second, the PSLRA provides that within ninety days after publication of the notice, the Court shall consider any motions made by a member of the purported class in response to any such notice.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Under this section, the Court "shall" appoint the "most adequate plaintiff," and is to presume that such plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Under the framework set forth in the PSLRA, the Florida Safety Funds are the "most adequate plaintiff" because they: (1) timely moved for appointment as Lead Plaintiff; (2) possess the "largest financial interest in the relief sought by the class;" and (3) "otherwise satisf[y] the requirements of Rule 23" for purposes of this motion.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 2.     The Florida Safety Funds' Motion is Timely

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the notice published on January 24, 2024, on *BusinessWire*, alerted investors to the filing of the Action and the March 25, 2024 deadline for seeking appointment as Lead Plaintiff.  *See* Promisloff Decl., Ex. D.  Thus, pursuant to the PSLRA, any member of the proposed Class may apply for appointment as Lead Plaintiff within 60 days of the publication of the notice, *i.e.*, on or before March 25, 2024.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).   The Florida Safety Funds filed their motion seeking appointment as Lead Plaintiff within this deadline and thus have satisfied the procedural requirements of the PSLRA.

### 3.     The Florida Safety Funds Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, the Florida Safety Funds have a substantial financial interest in the relief sought by the Class having together suffered a substantial loss of $719,223 pursuant to the LIFO loss calculation method on their investments in Evolution ADRs as a result of Defendants' misconduct.  *See* Promisloff Decl., Exs. A & B.  The Florida Safety Funds are unaware of any other movant with a greater financial interest in the outcome of this litigation.  Accordingly, Hollywood Fire and Coral Springs Police have the largest financial interest of any qualified movant seeking appointment as lead plaintiff and is the presumptive "most adequate plaintiff."  *See Cendant*, 264 F.3d at 243 ("The Reform Act establishes a presumption that the class member most capable of adequately representing the interests of class members is the shareholder with the largest financial stake in the recovery sought by the class.") (internal quotation marks and citation omitted); *see also Elkin v. Walter Inv. Mgmt. Corp.*, No. CV 17-2025, 2017 WL 2547292, at *3 (E.D. Pa. June 13, 2017) (finding movant that

claimed the largest loss had "the largest financial stake in the litigation" and was the presumptive lead plaintiff).

### 4.    The Florida Safety Funds Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the relief sought by the Class, the lead plaintiff must also satisfy the applicable requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a movant may serve as class representative if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  However, at the lead plaintiff stage, a movant need only make a "*prima facie* showing of typicality and adequacy."  *Cendant*, 264 F.3d at 263; *see also Strougo v. Unisys Corp.*, No. 22-cv-4529, 2023 WL 4140822 at *2 (E.D. Pa. June 22, 2023) ("The initial inquiry into a movant's typicality and adequacy need not be extensive," and "[i]f the movant with the largest financial interest makes a *prima facie* showing of typicality and adequacy, that movant is the presumptive lead plaintiff.") (internal quotation and citation omitted).  Hollywood Fire and Coral Springs Police clearly satisfy Rule 23's typicality and adequacy requirements.

### a.    The Florida Safety Funds' Claims Are Typical of Those of the Class

The typicality requirement "consider[s] whether the circumstances of the movant with the largest losses are markedly different from those of other class members." *Elkin*, 2017 WL 2547292, at *2.  The Florida Safety Funds' claims are typical of the claims asserted by the

proposed class.  Like all members of the Class, the Florida Funds: (1) purchased Evolution ADRs during the Class Period; (2) at prices that were artificially inflated by Defendants' false and misleading statements and omissions; and (3) suffered damages as a result.  *See Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 12-cv-0993, 2012 WL 3597179, at \*3 (M.D. Pa. Aug. 20, 2012) (discussing typicality requirement and explaining that a lead plaintiff movant's claims "need not be identical to the claims of the class to satisfy the typicality requirement").  Thus, the Florida Safety Funds' claims arise from the same conduct as those of the other Class members, and the Florida Safety Funds are typical.  *See  Elkin*, 2017 WL 2547292, at \*3 (finding that a lead plaintiff movant had satisfied the typicality requirement where it "does not rely on a markedly different circumstance or legal theory than other class members" and "was injured by the same course of conduct" as the class).

### b.    The Florida Safety Funds Will Fairly and Adequately Protect the Interests of the Class

The adequacy element of Rule 23 is satisfied where a movant establishes that it can "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In evaluating whether a movant satisfies the adequacy requirement, courts consider whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."  *Cendant*, 264 F.3d at 265 (citations omitted; alterations in original).

The Florida Safety Funds would be a fair and adequate representative for the Class because, given their substantial financial stake in the litigation, their interest in vigorously pursuing claims against Defendants aligns with the interests of other Class members who were similarly harmed as a result of Defendants' false and/or misleading statements.  There is no potential conflict between the interests of the Florida Safety Funds and other members of the Class, and the Florida Safety

Funds are fully committed to vigorously pursuing the claims on behalf of the Class. *See Elkin*, 2017 WL 2547292, at *3 (finding that a lead plaintiff movant had satisfied the adequacy requirement because it had "compl[ied] with the procedures of the PSLRA," "assert[ed] that [it] had no conflict with the claims of the class," and "selected experienced and competent counsel"). As set forth below, the Florida Safety Funds have provided information about their backgrounds and affirmed their commitment to fulfilling the fiduciary role of Lead Plaintiff should they be appointed.

The Florida Safety Funds have further demonstrated their adequacy by retaining competent and experienced counsel to prosecute these claims. The Florida Safety Funds' proposed Lead Counsel and Liaison Counsel are highly qualified and experienced in prosecuting securities class actions vigorously and efficiently. *See infra* Section B.

### c.   The Florida Safety Funds Are Ideal Plaintiffs to Represent the Class

As sophisticated public pension funds with experience serving as lead plaintiff in other actions, the Florida Safety Funds also satisfy Congress's goal of encouraging institutional investors to "take the reins" in securities class actions. *See* H.R. Conf. Rep. No. 104- 369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 755 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representations in securities class actions"); *see also  Gaer v. Educ. Mgmt. Corp.*, No. 10-cv-1061, 2010 WL 4687791, at *4 (W.D. Pa. Nov. 10, 2010) (noting preference for institutional investors serving as lead plaintiffs).

As described in their Joint Declaration, the Florida Safety Funds have the ability, resources, and incentive to vigorously represent the Class and supervise Class counsel. *See* Promisloff Decl., Ex. C ¶ 9. The Florida Safety Funds further detail in the Joint Declaration their backgrounds and

their significant relevant experience in selecting and overseeing counsel in securities class actions. *See id.* ¶¶ 2-6, 11.  The Florida Safety Funds also understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action, and have pledged to "provid[e] testimony at deposition and trial, if necessary."  Promisloff Decl., Ex. A.

The Joint Declaration also explains how and why the Florida Safety Funds decided to collaborate in this litigation.  Specifically, before seeking Lead Plaintiff appointment, the Florida Safety Funds considered the merits of the claims against Defendants, their losses caused by Defendants' fraud, and their proposed litigation strategy.  *See id.* ¶¶ 11-12.

Recognizing that this litigation will be best guided by institutional investors that are familiar with and/or understand the requirements attendant upon a fiduciary, the Florida Safety Funds each independently determined to join together to seek appointment as Lead Plaintiff. Hollywood Fire and Coral Springs Police's decision to join together was based on, among other things, their familiarity with each other from their public-safety work and membership in common trade associations and pension education conferences over the years and their mutual perspectives as fiduciaries to their respective members.  *See id.* ¶ 9.  Based on the Florida Safety Funds' understanding that working together would allow for the sharing of experiences and resources, they believed that partnering would add substantial value to the prosecution of this Action and would benefit the Class.  *See id.* ¶¶ 9-10.

As set forth in their Joint Declaration, the Florida Safety Funds have demonstrated their commitment to working cohesively together in the prosecution of this Action.  *See id.* ¶¶ 7-13. The Joint Declaration also details the steps that the Florida Safety Funds have already taken (and will continue to take) to ensure the vigorous prosecution of this Action and to oversee counsel. *See id.*  Specifically, before seeking appointment as Lead Plaintiff, representatives from the Florida

Safety Funds participated in a conference call to formalize their oversight of this litigation and discuss, among other things, the strength of the claims against Defendants and their ability and incentive to vigorously represent the claims of the Class. *See id.* ¶¶ 11-12. The Florida Safety Funds also discussed their understanding of the duties of a Lead Plaintiff pursuant to the PSLRA, including, among other things, the lead plaintiff process and the Florida Safety Funds' common goals and strategy for the joint prosecution of this litigation, and their like-minded approach toward decision-making. *See id.* The collaboration of the Florida Safety Funds in this litigation follows their shared goals and interests in protecting and maximizing the assets of the Florida Safety Funds and the Class and in enhancing the reliability of information disseminated by publicly traded corporations. *See id.* ¶ 9.

In sum, Hollywood Fire and Coral Springs Police have demonstrated their willingness, resources, and commitment to working closely with one another to supervise proposed Lead Counsel and Liaison Counsel for the Class and obtain the best possible recovery for the Class. Thus, the Class would benefit from the Florida Safety Funds' leadership of this litigation.

### B. The Court Should Approve the Florida Safety Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 734; *see also Cendant*, 264 F.3d at 274 ("[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices."); *Strougo*, 2023 WL 4140822 at *2 (finding "the court should defer to the lead plaintiff's selection so long as that selection is reasonable") (citation omitted).

Here, the Florida Safety Funds have selected and retained Saxena White to serve as Lead Counsel for the Class. Saxena White has secured substantial recoveries on behalf of investor classes while serving as lead counsel in securities class actions throughout the country, including in this District. *See also* Promisloff Decl., Ex. E (Firm resume of Saxena White). The firm's experience includes: the $17.5 million recovery in *Teamsters Local 456 Pension Fund v. Universal Health Services Inc.*, No. 2:17-cv-02817-JHS (E.D. Pa.), with Promisloff serving as liaison counsel; the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 1:10-cv-00990 (D. Del.) (with Coral Springs Police serving as co-lead plaintiff); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 1:17-cv-00304 (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-01395 (M.D. Fla.); the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 1:04-cv-07644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-cv-02587 (N.D. Ga.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 3:21-cv-00444 (E.D. Va.) (pending final approval); the $28.5 million recovery in *In re FibroGen Inc. Securities Litigation*, No. 3:21-cv-02623 (N.D. Cal.) (pending final approval); and the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation*, No. 2:20-cv-00856 (S.D. Ala.). Moreover, Saxena White achieved a $240 million settlement together with significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement in history. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541 (N.D. Cal.). Additionally, Saxena White achieved a $180 million settlement in a derivative action involving a corruption and

13

bribery scheme, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 2:20-cv-04534 (S.D. Ohio).

By approving Florida Safety Funds' choice of Lead Counsel, this Court will also advance the important goal of increasing diversity among class counsel. *See In re Gildan Activewear Inc. Sec. Litig.*, No. 1:08-cv-05048-HB, 2010 WL 11746218, at *1 (S.D.N.Y. Sept. 20, 2010) (because "proposed class includes thousands of participants, both male and female, arguably from diverse backgrounds, . . . it is therefore important to all concerned that there is evidence of diversity, in terms of race and gender, in the class counsel I appoint"). As a federally certified woman and minority-owned firm specializing in representing injured investors as plaintiffs in securities litigation, Saxena White is committed to diversity. For example, Saxena White was selected by the Chief Judge of the Northern District of Ohio as Co-Lead Counsel in an important shareholder derivative action involving a corruption and bribery scheme, not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 2:20-cv-04534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020).

Additionally, proposed Liaison Counsel Promisloff has substantial experience in this District and experience with securities class action litigation. *See* Promisloff Decl., Ex. F (Firm resume of Promisloff).

Thus, the Court may be assured that Saxena White and Promisloff would provide the highest caliber of legal representation available to the Class. Accordingly, the Florida Safety Funds' selection of counsel should be approved.

14

IV.    **CONCLUSION**

      For the reasons stated herein, the Florida Safety Funds respectfully request that the Court: (1) appoint the Florida Safety Funds as Lead Plaintiff; (2) approve their selection of Saxena White as Lead Counsel and Promisloff as Liaison Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

DATED:  March 25, 2024

                                             Respectfully submitted,

                                             **PROMISLOFF LAW, P.C.**

                                             */s/ David M. Promisloff*
                                             David M. Promisloff (ID# 200971)
                                             5 Great Valley Parkway, Suite 210
                                             Malvern, PA 19355
                                             Tel.: (215) 259-5156
                                             Fax: (215) 600-2642
                                             david@prolawpa.com

                                             *Liaison Counsel for Proposed Lead Plaintiff the Florida Safety Funds and Proposed Liaison Counsel for the Class*

                                             **SAXENA WHITE P.A.**
                                             Lester R. Hooker (*pro hac vice* forthcoming)
                                             7777 Glades Road, Suite 300
                                             Boca Raton, FL 33434
                                             Tel.: (561) 394-3399
                                             Fax: (561) 394-3382
                                             lhooker@saxenawhite.com

                                             - and -

                                             **SAXENA WHITE P.A.**
                                             Marco A. Dueñas (*pro hac vice* forthcoming)
                                             10 Bank Street, Suite 882
                                             White Plains, NY 10606
                                             Tel.: (914) 437-8551
                                             Fax: (888) 631-3611
                                             mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the
Florida Safety Funds and Proposed Lead
Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and it is available for viewing and downloading from the ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

DATED:  March 25, 2024

<u>/s/ David M. Promisloff</u>
David M. Promisloff