# EXHIBIT 20

SULLIVAN & CROMWELL LLP

July 30, 2018

# Ninth Circuit Holds That Non-U.S. Issuers Can Be Liable in U.S. for Unsponsored American Depositary Receipt Facility

**Transactions in Unsponsored American Depositary Receipts Can Qualify as "Domestic" Transactions Subject to Suit Under U.S. Securities Laws**

### SUMMARY

On July 17, the U.S. Court of Appeals for the Ninth Circuit issued its decision in *Stoyas* v. *Toshiba Corporation*,[1] holding that plaintiffs can sue non-U.S. issuers for securities fraud in connection with over-the-counter purchases of unsponsored American Depositary Receipts ("ADRs").  In the case, plaintiffs sued Toshiba, a Japanese corporation with common stock traded only on the Tokyo Stock Exchange, over alleged misstatements that artificially inflated the value of Toshiba's unsponsored ADRs in the United States.

Although the Ninth Circuit's decision expands the scope of liability for non-U.S. issuers in connection with certain ADRs, the law remains uncertain as courts nationwide have adopted conflicting interpretations of the presumption against extraterritoriality in the context of ADRs. Furthermore, the Ninth Circuit's opinion might be narrower than it appears, given that the court also held that plaintiffs must plausibly allege that the non-U.S. issuer had made a misstatement "to induce" the purchase of ADRs, as opposed to inducing the purchase of its stock in general.

### BACKGROUND

One way for investors in the U.S. to invest in non-U.S. issuers is through ADRs, which represent an interest in a stock listed on a non-U.S. exchange.  For example, in *Stoyas*, each share in an ADR corresponded to six shares of Toshiba common stock listed on the Tokyo stock exchange.[2]  ADRs are

New York    Washington, D.C.    Los Angeles    Palo Alto    London    Paris    Frankfurt    Brussels
Tokyo    Hong Kong    Beijing    Melbourne    Sydney

www.sullcrom.com

**SULLIVAN & CROMWELL LLP**

issued by depositary banks in the United States that own the non-U.S. stock, and involve varying participation by the non-U.S. issuer depending on the category of ADR. For example, non-U.S. issuers can be directly involved in selling ADRs in the United States, and those ADRs are called "sponsored" ADRs, of which there are three types: level 1 sponsored ADRs are traded over-the-counter ("OTC"), level 2 sponsored ADRs are traded on national stock exchanges (like the NYSE), and level 3 are the same as level 2 except issued for the purpose of raising new capital.[3] In addition, ADRs can be "unsponsored," a situation in which a depositary bank in the United States issues ADRs to be traded OTC without any formal involvement of the non-U.S. issuer, although depositary banks frequently seek letters of non-objection from the non-U.S. issuer before establishing an unsponsored ADR facility.

In *Morrison* v. *National Australia Bank Ltd.*, the U.S. Supreme Court held that the Securities Exchange Act of 1934 had no extraterritorial application, and so plaintiffs in the United States could sue under that Act only with respect to (i) "transactions in securities listed on domestic exchanges," or (ii) "domestic transactions" not listed on domestic exchanges.[4] Suits are commonly filed in connection with level 2 and level 3 sponsored ADRs, because those securities are traded on national securities exchanges as defined in the Exchange Act. Federal district courts, however, have disagreed on the question of whether suits concerning unsponsored and level 1 sponsored ADRs are impermissibly extraterritorial under either "prong" of *Morrison*.[5]

In *Stoyas*, plaintiffs alleged that they paid artificially inflated prices for Toshiba unsponsored ADRs on account of the company's misstatements made in Japan. The district court dismissed the complaint with prejudice, holding that neither prong of *Morrison* was satisfied.[6] The court interpreted the first prong of *Morrison* to include only "national securities exchanges" as defined in the Exchange Act, which do not include OTC markets. The court then considered the second "domestic transaction" prong, finding that even though "the [ADR] transactions are securities transactions that occurred domestically," "all the policy and reasoning in *Morrison*" preclude a lawsuit where "independent actions of depositary banks selling on OTC markets could create liability" for a non-U.S. issuer that did not sponsor the ADRs.[7]

## THE NINTH CIRCUIT'S DECISION

The Ninth Circuit reversed, holding that U.S. plaintiffs can sue non-U.S. issuers in connection with unsponsored ADRs.

The Ninth Circuit first addressed the threshold issue of whether an ADR qualifies as a "security" within the meaning of the Exchange Act. The court answered in the affirmative, noting that "Toshiba ADRs share many of the five significant characteristics typically associated with common stock," and that "the economic reality of Toshiba ADRs is closely akin to stock."[8]

-2-

SULLIVAN & CROMWELL LLP

The court then addressed whether the claims were impermissibly extraterritorial under *Morrison*. On the first prong, the panel ultimately did not resolve whether OTC markets are a "domestic exchange" under *Morrison*, holding instead that "[t]he over-the-counter market on which Toshiba ADRs trade is simply not an 'exchange' under the Exchange Act."[9] The court noted that Toshiba ADRs trade on a market called "OTC Link," which is registered with the SEC as an "alternative trading system."[10] And because the regulatory regime treats "alternative trade systems" differently from "exchanges," OTC Link's registration as an alternative trading system precluded it from also being an exchange.[11]

Turning to the second prong of *Morrison*, the court held that the purchase of unsponsored ADRs could be "domestic transactions." To find the location of a transaction, the court adopted the "irrevocable liability" test used in the Second and Third Circuits, which provides that the location of a transaction is the place where "purchasers incurred the liability to take and pay for securities, and where sellers incurred the liability to deliver securities."[12] Although the complaint in *Stoyas* lacked sufficient detail about where irrevocable liability had been incurred, the court stated that "an amended complaint could almost certainly allege sufficient facts to establish that [plaintiff] purchased its Toshiba ADRs in a domestic transaction," given that the ADRs were purchased in the U.S. and the depositary bank seller sold the ADRs in the United States.[13]

Relying on the Second Circuit's decision in *Parkcentral Global Hub Ltd.* v. *Porsche Auto. Holdings SE*, Toshiba argued that a transaction in the United States is a necessary but insufficient condition for maintaining suit under the Exchange Act, and that claims remained precluded where they were so "predominantly foreign as to be impermissibly extraterritorial."[14] The Ninth Circuit distinguished the facts of *Parkcentral*, which did not involve ADRs but instead securities-based swap agreements that referenced securities trading entirely on foreign exchanges, thereby "implicating concerns that incompatible U.S. and foreign law would almost certainly regulate the same security."[15] The Ninth Circuit also stated that "the principal reason that [the Ninth Circuit] should not follow the *Parkcentral* decision is because it is contrary to Section 10(b) and *Morrison* itself."[16] The Ninth Circuit explained that *Parkcentral* was wrongly decided, because (i) "[t]he basis for the carve-out [in *Parkcentral*] was speculation about Congressional intent, an inquiry *Morrison* rebukes," (ii) "*Parkcentral*'s test for whether a claim is foreign is an open-ended, under-defined multi-factor test, akin to the vague and unpredictable tests that *Morrison* criticized and endeavored to replace with a clear, administrable rule," and (iii) "*Parkcentral*'s analysis relies heavily on the foreign location of the allegedly deceptive conduct, which *Morrison* held to be irrelevant to the Exchange Act's applicability, given Section 10(b)'s exclusive focus on transactions."[17]

Finally, the court considered whether the complaint adequately pled whether Toshiba's misstatements were made "in connection with the purchase or sale" of the ADRs.[18] To satisfy this requirement, the court held, the alleged foreign fraud "must 'touch' the sale—*i.e.*, it must be done to induce the purchase at issue."[19] The court noted that although the complaint fell short in this respect, plaintiffs had argued

-3-

**SULLIVAN & CROMWELL LLP**

several facts on appeal about Toshiba's participation in the unsponsored ADR facility that, if pled in the complaint, could be sufficient. For example, plaintiffs noted on appeal that (i) "depositary banks typically obtain the issuer's consent before establishing an unsponsored ADR facility," (ii) Toshiba had made the unsponsored ADR facility possible by meeting certain regulatory requirements, including by "posting its annual report in English on its website and by not establishing a sponsored ADR (which would preclude unsponsored ADRs)," and (iii) the "Bank of New York Mellon"—one of the depositary banks for Toshiba ADRs—"is unlikely to have acquired over fifty million Toshiba shares without Toshiba's involvement."[20]

## IMPLICATIONS

The Ninth Circuit's decision expands the potential scope of liability for non-U.S. issuers with unsponsored or sponsored level 1 ADRs traded in the United States. Although some district courts have held that OTC-traded ADRs are beyond the scope of the Exchange Act, the Ninth Circuit's decision—the first court of appeals to directly address the issue—has now come out the other way. There are four potential implications for non-U.S. issuers.

*First*, under the Ninth Circuit's reasoning, it is now almost certain that U.S. plaintiffs would be able to sue in connection with purchases of level 1 sponsored ADRs—at least in the states covered by the Ninth Circuit, such as California, where many prominent institutional investors reside. Accordingly, non-U.S. issuers with level 1 sponsored ADRs should now keep in mind that statements worldwide could expose them to potential liability for securities fraud lawsuits in the United States.

*Second*, the Ninth Circuit held that certain categories of facts must be alleged before non-U.S. issuers could be sued in connection with unsponsored ADRs. Non-U.S. issuers with an unsponsored ADR program thus may potentially have defenses to liability that would be unavailable to issuers with level 1 sponsored ADRs.

*Third*, non-U.S. issuers with an unsponsored ADR facility in the United States should be mindful of taking steps that could be viewed as involvement with the establishment and maintenance of that facility. Most importantly, non-U.S. issuers should consider the potential implications when a U.S. depositary bank requests the issuer's consent to establish an unsponsored ADR facility. Non-U.S. issuers should remain comfortable, however, with posting English-language documents on their websites, because the Ninth Circuit stated that such publications, without more, are insufficient to connect non-U.S. issuers to U.S. ADR transactions.[21]

-4-

Ninth Circuit Holds That Non-U.S. Issuers Can Be Liable in U.S. for Unsponsored American Depositary Receipt Facility
July 30, 2018

SULLIVAN & CROMWELL LLP

**Fourth**, there is now a split of authority in the United States concerning how to determine whether a securities transaction is sufficiently "domestic" to permit a lawsuit under the Exchange Act: the Ninth Circuit has adopted a bright-line test that a transaction is domestic if irrevocable liability was incurred in the U.S., whereas the Second Circuit still bars Exchange Act claims concerning domestic transactions that are "predominantly foreign" in nature. Non-U.S. entities dealing with any type of security that might potentially be purchased in the United States should pay attention to the law as it develops in this area, which could potentially be resolved by the U.S. Supreme Court.

\*   \*   \*

Copyright © Sullivan & Cromwell LLP 2018

**SULLIVAN & CROMWELL LLP**

## ENDNOTES

[1] No. 16-56058, 2018 WL 3431764 (9th Cir. July 17, 2018) ("*Stoyas II*").

[2] *Id.* at *5 n.9.

[3] *See generally Pinker* v. *Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002) (explaining different categories of ADRs).

[4] 561 U.S. 247, 267 (2010).

[5] **"Domestic Exchange."** *Compare*, *e.g.*, *United States* v. *Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015) (holding that "domestic exchange" under *Morrison* means "national securities exchanges" as expressly defined in the Exchange Act, which does not include OTC exchanges) *with S.E.C.* v. *Ficeto*, 839 F. Supp. 2d 1101, 1109, 1117 (C.D. Cal. 2011) ("*Morrison* does not bar the application of § 10(b) to . . . the domestic over-the-counter securities market"); *United States* v. *Isaacson*, 752 F.3d 1291, 1299 (11th Cir. 2014) ("[Securities] traded on the Over-the-Counter Bulletin Board or the Pink Sheets . . . meet[] *Morrison*'s requirements for a U.S. nexus.") **"Domestic Transaction."** *Compare*, *e.g.*, *In re Société Générale Sec. Litig.*, 2010 WL 3910286, at *6 (S.D.N.Y. Sept. 29, 2010) (holding that because "[t]rade in ADRs is considered to be a predominantly foreign securities transaction, Section 10(b) is inapplicable") *with Wu* v. *Stomber*, 883 F. Supp. 2d 233, 253 (D.D.C. 2012) ("[*Société Générale*] is inconsistent with the bright line test set forth by the Supreme Court in *Morrison*, which focuses specifically and exclusively on where the plaintiff's purchase occurred.").

[6] *Stoyas* v. *Toshiba Corp.*, 191 F. Supp. 3d 1080, 1085 (C.D. Cal. 2016).

[7] *Id.* at 1094-95.

[8] *Stoyas II*, 2018 WL 3431764, at *5-6.

[9] *Id.* at *9.

[10] *Id.*

[11] *Id.* at *10.

[12] *Id.* at *11-12.

[13] *Id.* at *12.

[14] 763 F.3d 198, 216 (2d Cir. 2014).

[15] *Stoyas II*, 2018 WL 3431764 at *12.

[16] *Id.* at *13.

[17] *Id.* (internal quotation mark and citations omitted).

[18] *Id.*

[19] *Id.*

[20] *Id.* at *14.

[21] *Id.* n.24.

Ninth Circuit Holds That Non-U.S. Issuers Can Be Liable in U.S. for Unsponsored American Depositary Receipt Facility
July 30, 2018

# SULLIVAN & CROMWELL LLP

**ABOUT SULLIVAN & CROMWELL LLP**

Sullivan & Cromwell LLP is a global law firm that advises on major domestic and cross-border M&A, finance, corporate and real estate transactions, significant litigation and corporate investigations, and complex restructuring, regulatory, tax and estate planning matters.  Founded in 1879, Sullivan & Cromwell LLP has more than 875 lawyers on four continents, with four offices in the United States, including its headquarters in New York, four offices in Europe, two in Australia and three in Asia.

**CONTACTING SULLIVAN & CROMWELL LLP**

This publication is provided by Sullivan & Cromwell LLP as a service to clients and colleagues.  The information contained in this publication should not be construed as legal advice.  Questions regarding the matters discussed in this publication may be directed to any of our lawyers listed below, or to any other Sullivan & Cromwell LLP lawyer with whom you have consulted in the past on similar matters.  If you have not received this publication directly from us, you may obtain a copy of any past or future publications by sending an e-mail to SCPublications@sullcrom.com.

**CONTACTS**

**New York**

| | | |
|---|---|---|
| Brian T. Frawley | +1-212-558-4983 | frawleyb@sullcrom.com |
| Suhana S. Han | +1-212-558-4647 | hans@sullcrom.com |
| John L. Hardiman | +1-212-558-4070 | hardimanj@sullcrom.com |
| Richard C. Pepperman II | +1-212-558-3493 | peppermanr@sullcrom.com |
| Matthew A. Schwartz | +1-212-558-4197 | schwartzmatthew@sullcrom.com |
| Michael T. Tomaino Jr. | +1-212-558-4715 | tomainom@sullcrom.com |

**Palo Alto**

| | | |
|---|---|---|
| Brendan P. Cullen | +1-650-461-5650 | cullenb@sullcrom.com |

Ninth Circuit Holds That Non-U.S. Issuers Can Be Liable in U.S. for Unsponsored American Depositary Receipt Facility
July 30, 2018
SC1:4710314.3A