**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

RACHEL SKOLNICK,
individually and on behalf of all others
similarly situated,

                Plaintiff,

      v.

EVOLUTION AB (PUBL), MARTIN
CARLESUND, and JACOB KAPLAN,

                Defendants.

Civ. Action No. 2:24-cv-00326-MRP

**REPLY IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
David M.J. Rein (admitted *pro hac vice*)
Julia A. Malkina (admitted *pro hac vice*)
Gulliver Brady (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
giuffrar@sullcrom.com
reind@sullcrom.com
malkinaj@sullcrom.com
bradyg@sullcrom.com

Shannon E. McClure
BLANK ROME LLP
130 North 18th Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 569-5500
shannon.mcclure@blankrome.com

*Counsel for Defendants Evolution AB (publ),*
*Martin Carlesund, and Jacob Kaplan*

February 12, 2025

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ......................................................................................................1

**ARGUMENT**...............................................................................................................................2

**I.     PLAINTIFFS' OPPOSITION CONFIRMS THAT THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS**.................................................2

**II.    PLAINTIFFS FAIL TO PLEAD ANY MATERIAL MISSTATEMENTS** .................5

    A.     Defendants' Compliance Statements Are Not Actionable...................................... 5

    B.     Defendants' Growth Statements Are Not Actionable............................................ 8

**III.   PLAINTIFFS HAVE NOT PLED THE REQUIRED STRONG INFERENCE OF SCIENTER**...........................................................................................................9

**CONCLUSION** ...........................................................................................................................12

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Azurous, Inc.* v. *Kennedy International, Inc.*,
2024 WL 3219663 (D.N.J. June 28, 2024) ..................................................................11

*Castlerock Management, Ltd.* v. *Ultralife Batteries, Inc.*,
68 F. Supp. 2d 480 (D.N.J. 1999) ..............................................................................12

*Chappell* v. *Precision Drilling Corp.*,
2024 WL 2818260 (M.D. Pa. June 3, 2024) ..................................................................5

*City of Brockton Retirement System* v. *Avon Products, Inc.*,
2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ...............................................................6

*City of Warren Police & Fire Retirement System* v. *World Wrestling Entertainment Inc.*,
477 F. Supp. 3d 123 (S.D.N.Y. 2020) ........................................................................11

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014) .....................................................................................................3

*ECA, Local 134 IBEW Joint Pension Trust* v. *JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ........................................................................................7

*Eurofins Pharma US Holdings* v. *BioAlliance Pharma SA*,
623 F.3d 147 (3d Cir. 2010) ........................................................................................4

*Ford Motor Co.* v. *Montana Eighth Judicial District Court*,
592 U.S. 351 (2021) ..................................................................................................1, 4

*GSC Partners CDO Fund* v. *Washington*,
368 F.3d 228 (3d Cir. 2004) ................................................................................... 9-10

*Henry* v. *Futu Holdings Ltd.*,
2024 WL 4285129 (D.N.J. Sept. 25, 2024) ...............................................................6, 7

*Howard* v. *Arconic Inc.*,
395 F. Supp. 3d 516 (W.D. Pa. 2019) ...................................................................6, 7, 8

*In re Advanta Corp. Securities Litigation*,
180 F.3d 525 (3d Cir. 1999) ...............................................................................8, 9, 10

*In re American Business Financial Services, Inc. Securities Litigation*,
413 F. Supp. 2d 378 (E.D. Pa. 2005) .........................................................................2, 9

*In re Amarin Corp. PLC Securities Litigation*,
  2022 WL 2128560 (3d Cir. June 14, 2022) ...................................................5

*In re Burlington Coat Factory Securities Litigation*,
  114 F.3d 1410 (3d Cir. 1997)...........................................................5, 8, 11

*In re Career Education Corp. Securities Litigation*,
  2006 WL 999988 (N.D. Ill. Mar. 28, 2006)..............................................7

*In re Chocolate Confectionary Antitrust Litigation*,
  674 F. Supp. 2d 580 (M.D. Pa. 2009) ...................................................3, 4

*In re Datatec Systems, Inc. Securities Litigation*,
  2006 WL 3095951 (D.N.J. Oct. 30, 2006)................................................9

*In re Diebold Nixdorf, Inc. Securities Litigation*,
  2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .........................................10

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*,
  735 F. Supp. 2d 277 (W.D. Pa. 2010)......................................................3

*In re ITT Educational Services, Inc. Securities & Shareholder Derivatives
  Litigation*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012)......................................................7

*In re Telefonaktiebolaget LM Ericsson Securities Litigation*,
  675 F. Supp. 3d 273 (E.D.N.Y. 2023) ................................................. 5-6

*Institutional Investors Group* v. *Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009).................................................................2, 8

*Kalnit* v. *Eichler*,
  264 F.3d 131 (2d Cir. 2001)..................................................................10

*Key Equity Investors, Inc.* v. *Sel-Leb Marketing Inc.*,
  246 F. App'x 780 (3d Cir. 2007) .....................................................2, 5, 8

*Lincoln Benefit Life Co.* v. *AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015)......................................................................4

*Lucas* v. *Gulf & Western Industries, Inc.*,
  666 F.2d 800 (3d Cir. 1981)....................................................................3

*Lutz* v. *Rakuten, Inc.*,
  376 F. Supp. 3d 455 (E.D. Pa. 2019) ......................................................4

*Mallory* v. *Norfolk Southern Railway Co.*,
  600 U.S. 122 (2023)................................................................................3

*Menaldi* v. *Och-Ziff Capital Management Group*,
277 F. Supp. 3d 500 (S.D.N.Y. 2017) ................................................................. 7-8

*Mendelsohn, Drucker & Associates* v. *Titan Atlas Manufacturing, Inc.*,
885 F. Supp. 2d 767 (E.D. Pa. 2012) ........................................................................4

*Morrison* v. *National Australia Bank Ltd.*,
561 U.S. 247 (2010) .................................................................................................4

*Muhammad* v. *Weis*,
2009 WL 564441 (E.D. Pa. Mar. 4, 2009) ...........................................................1, 3

*National Junior Baseball League* v. *Pharmanet Development Group Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) ........................................................................12

*Pennsylvania* v. *PepsiCo*,
836 F.2d 173 (3d Cir. 1988) ....................................................................................6

*Pelletier* v. *Endo International PLC*,
439 F. Supp. 3d 450 (E.D. Pa. 2020) .......................................................................7

*Rauso* v. *Fein*,
2017 WL 3279009 (E.D. Pa. Aug. 2, 2017) ...........................................................12

*Riad* v. *Porsche Cars North America, Inc.*,
657 F. Supp. 3d 695 (E.D. Pa. 2023) ....................................................................3, 4

*Teamsters Local 456 Pension Fund* v. *Universal Health Services*,
396 F. Supp. 3d 413 (E.D. Pa. 2019) .......................................................................2

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................................................................................2, 11, 12

*Trinity Industries* v. *Greenlease Holding Co.*,
903 F.3d 333 (3d Cir. 2018) ....................................................................................3

**Statutes**

4 Pa. Cons. Stat. § 13B12(a) ....................................................................................3

15 Pa. Cons. Stat. § 411(a) .......................................................................................3

42 Pa. Cons. Stat. § 5322(c) .....................................................................................5

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition confirms that settled law requires dismissal of the Complaint with prejudice for three independent reasons:

*First*, Plaintiffs do not plead personal jurisdiction. As to general jurisdiction, Plaintiffs rely on Pennsylvania Gaming Control Board ("PGCB") licenses held by Evolution AB (publ) ("Evolution"), its subsidiaries, and Martin Carlesund and Jacob Kaplan (the "Individual Defendants"). But being " licensed . . . does not alone establish . . . continuous and systematic individual contacts." *Muhammad* v. *Weis*, 2009 WL 564441, at *2 (E.D. Pa. Mar. 4, 2009). For specific jurisdiction, Plaintiffs do not allege contacts with the United States by Defendants that "arise out of or relate to" Plaintiffs' securities claims over unsponsored American Depository Receipts ("ADRs"). *Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). These ADRs were issued by four U.S. banks—with no well-pled involvement by Defendants— and reference Evolution stock traded solely in Sweden.

*Second*, Plaintiffs offer no response to the "well-established" law that Defendants' general statements (to investors in Sweden) about Evolution's procedures for checking customers' compliance with local gaming laws ("Compliance Statements") are not actionable as a matter of law. Plaintiffs do not allege that Evolution did not have such compliance procedures, only that foreign regulators investigated a handful of Evolution's thousands of direct and indirect customers. And Plaintiffs ignore Defendants' express warnings that it was their customers' "responsibility to comply" with local gaming laws, and that their customers could face "regulatory or enforcement actions" if they did not, which is exactly the risk that Plaintiffs complain materialized. (Ex. 3 at 50; Ex. 30 at 2.)[1] In challenging Defendants' aspirational statements about Evolution's growth

---

[1] "Ex." refers to Exhibits to the Declaration of David M.J. Rein, dated November 12, 2024 (ECF No. 44).

goals ("Growth Statements"), Plaintiffs cannot end-run Third Circuit law holding that "projections about the company's financial growth . . . are not actionable," *Key Equity Invs., Inc.* v. *Sel-Leb Mktg. Inc.*, 246 F. App'x 780, 785 (3d Cir. 2007), particularly where, as here, the company warned that its growth "will not be linear" (Ex. 31 at 4). Plaintiffs emphasize Defendants' statements supposedly describing a "positive outlook" (Opp. 17), but "[c]ourts everywhere" have found "immaterial as a matter of law" "rosy affirmation[s]," *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 400 (E.D. Pa. 2005).

*Third*, Plaintiffs' Opposition underscores their failure to satisfy the Private Securities Litigation Reform Act's ("PSLRA") "'exacting' pleading standard" to allege with "particularity facts giving rise to a strong inference" of scienter. *Inst. Invs. Grp.* v. *Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Instead, Plaintiffs trot out the universally rejected speculation that "because of [their] position[s] in the company," the Individual Defendants "'must have known' a statement was false." *Teamsters Loc. 456 Pension Fund* v. *Universal Health Servs.*, 396 F. Supp. 3d 413, 472 (E.D. Pa. 2019). In pointing to Defendants' sales of warrants on Evolution shares, Plaintiffs ignore that Evolution's shareholders pre-approved the sales almost a year before they occurred, as reflected in the very filings that their Complaint cites. Despite Plaintiffs' efforts to try to suppress this information—in both their Opposition and their Motion to Strike (ECF No. 46)—the Supreme Court is explicit that "courts must consider plausible, nonculpable explanations for the defendant's conduct" when determining whether Plaintiffs plead a "cogent and compelling" inference of scienter. *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

## ARGUMENT

### I. PLAINTIFFS' OPPOSITION CONFIRMS THAT THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

In trying to haul Defendants into U.S. court for statements made about stock traded in Sweden, Plaintiffs assert that this Court has general jurisdiction based on Defendants' PGCB

licenses.  (Opp. 4-5.)  But Defendants' PGCB licenses are not "continuous and systematic individual contacts with the Commonwealth."  *Muhammad*, 2009 WL 564441, at *2.[2]

Plaintiffs then claim that Evolution "consented" to general jurisdiction because it "unequivocally controlled" two subsidiaries registered to do business in Pennsylvania.  (Opp. 6-8.)  But the Supreme Court has held that companies are "ordinarily" subject to general jurisdiction in "only one place."  *Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014).  And in trying to satisfy the "notoriously difficult" task of alleging that the subsidiaries are Evolution's "alter ego[s]," *Trinity Indus.* v. *Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018), Plaintiffs relegate the ten factors that courts use to assess alter-ego status to a footnote and tellingly ignore most of them (Opp. 7 n.9).  Alleging Evolution "reported the revenue generated from its North America operations" and "had 100% ownership, and voting rights, in [its] U.S. subsidiaries" (Opp. 5, 7) is insufficient because that "typif[ies] the standard parent-subsidiary interaction."  *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 599-600 (M.D. Pa. 2009).[3]  Instead, Plaintiffs must plead that Evolution "disregard[ed] [its subsidiaries'] corporate existence," *Riad* v. *Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 704 (E.D. Pa. 2023), but the undisputed record is that Evolution's U.S. subsidiaries are separately organized (*see* Carlesund Decl. ¶¶ 29-33).[4]  And as to

---

[2]    Unlike *Mallory* v. *Norfolk S. Ry. Co.*, 600 U.S. 122 (2023) (Opp. 4, 6-7), Plaintiffs do not allege that Evolution is registered to do business in Pennsylvania under 15 Pa. Cons. Stat. § 411(a), which requires consent to general jurisdiction.  *See* 600 U.S. at 134.  Instead, Evolution is licensed with the PGCB only as an "affiliate" (Opp. Ex. 2); it may not "operate or conduct interactive gaming . . . or offer interactive gaming" in Pennsylvania, 4 Pa. Cons. Stat. § 13B12(a).  The Individual Defendants hold licenses required for "principals" (Opp. Ex. 1 at 1-2), so they too cannot operate or offer online gaming in Pennsylvania, 4 Pa. Cons. Stat. § 13B12(a).

[3]    *See also Lucas* v. *Gulf & W. Indus., Inc.*, 666 F.2d 800, 805-06 (3d Cir. 1981) (no jurisdiction "merely because of [company's] ownership of the shares of stock of a subsidiary doing business in that state"); *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 322-23 (W.D. Pa. 2010) ("ownership by defendant parent of one-hundred percent of" subsidiary's stock "does not . . . permit the exercise of jurisdiction over the parent").

[4]    Plaintiffs try to understate the standard (Opp. 7-8), but in interpreting Plaintiffs' cases, courts in this District consistently require the pleading of disregard of the corporate form.  *E.g.,*

the Individual Defendants, Mr. Carlesund's travel to the United States a few times a year (Opp. 6) does not "approximate[] physical presence," *Chocolate*, 674 F. Supp. 2d at 602, 603 (no general jurisdiction even though defendants visited the U.S. "eighty-five times per year").

As to specific jurisdiction, Plaintiffs have not pled that their claims over unsponsored ADRs, issued with no well-pled involvement by Defendants, "arise out of or relate to" Defendants' U.S. contacts. *Ford Motor Co.*, 592 U.S. at 362. Plaintiffs identify no acts *by Defendants* concerning the unsponsored ADRs.[5]  Instead, Plaintiffs speculate that banks "frequently" seek company consent before issuing unsponsored ADRs of other companies (Opp. 9), but do *not* allege that happened here. In fact, Defendants never consented to banks' issuance of the unsponsored ADRs and had no role in their sale. (Carlesund Decl. ¶¶ 12-14; Kaplan Decl. ¶¶ 4-6.) Plaintiffs' assertion that Evolution "implie[dly] . . . consent[ed]" to the unsponsored ADRs' issuance (Opp. 9-10) is not an "affirmative act" through which Evolution "purposefully avail[ed] [itself] of the privilege of conducting activities within" the United States as required for specific jurisdiction. *Mendelsohn, Drucker & Assocs.* v. *Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 779 (E.D. Pa. 2012).[6]  Finally, the Pennsylvania long-arm statute (Opp. 8) provides specific

---

*Riad*, 657 F. Supp. 3d at 701 ("the two corporations operate as a single, amalgamated entity" (citing *Shuker* v. *Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018)); *Lutz* v. *Rakuten, Inc.*, 376 F. Supp. 3d 455, 470-71 (E.D. Pa. 2019) (parent "operat[es] 'day-to-day operations of the subsidiary'" (citing *Kehm Oil Co.* v. *Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008)).

[5]     That "U.S. ownership of Evolution's common stock dramatically increased each year," and "a U.S. investor has been Evolution's largest individual shareholder since 2020" (Opp. 9-10) is irrelevant because this case involves unsponsored ADRs, *not* Evolution's common stock traded in Sweden, which cannot be the subject of a U.S. securities case. *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010).

[6]     The Court should reject Plaintiffs' half-hearted request for jurisdictional discovery. (Opp. 3 n.5.) "[J]urisdictional discovery is not available merely because the plaintiff requests it," *Lincoln Ben. Life Co.* v. *AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015), and Plaintiffs have not pled "with reasonable particularity" any "requisite 'contacts between [Defendants] and the forum,'" *Eurofins Pharma US Holdings* v. *BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

-4-

jurisdiction for "only a cause of action arising from acts enumerated in [the statute]," 42 Pa. Cons. Stat. § 5322(c), and Plaintiffs' securities claims do not arise from licensing.[7]

## II.    PLAINTIFFS FAIL TO PLEAD ANY MATERIAL MISSTATEMENTS.

### A.    Defendants' Compliance Statements Are Not Actionable.

In their Opposition, Plaintiffs barely address the settled law making clear that the Compliance Statements (made to investors in Evolution's Swedish shares) are too general to be actionable as a matter of law, instead claiming that evaluating the statements' legal materiality is not an "appropriate inquiry at this stage." (Opp. 15.) Not true. As the Third Circuit has emphasized, "complaints alleging securities fraud often contain claims of omissions or misstatements" "that courts can rule . . . immaterial as a matter of law at the pleading stage." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426, 1427 (3d Cir. 1997) (affirming dismissal of claims based on "general, non-specific statement of optimism"); *see Key Equity Invs.*, 246 F. App'x at 785 (same); *In re Amarin Corp. PLC Sec. Litig.*, 2022 WL 2128560, at *3 (3d Cir. June 14, 2022) (affirming dismissal in light of "contemporaneous disclosures").[8]

To try to save their legally flawed Complaint, Plaintiffs rewrite the Compliance Statements to say that "Defendants repeatedly assured that they monitored and confirmed Evolution's customer's compliance with local gambling regulations." (Opp. 11.) Again, not true. Defendants "offere[d] no assurance that [Evolution's] compliance efforts w[ould] be successful," *City of Brockton Ret. Sys.* v. *Avon Prods., Inc.*, 2014 WL 4832321, at *16 (S.D.N.Y. Sept. 29,

---

[7]    *Chappell* v. *Precision Drilling Corp.*, 2024 WL 2818260 (M.D. Pa. June 3, 2024) (Opp. 8), does not address a parent (or subsidiary) being licensed to conduct business in Pennsylvania.

[8]    In evaluating Plaintiffs' allegations, this Court must examine the text of the challenged Compliance Statements. Although Plaintiffs claim they need not "plead issues that may have been concealed" by Defendants (Opp. 11), that does not apply where Plaintiffs allege the purportedly "concealed" information was "revealed" by corrective disclosures (AC ¶¶ 97, 104); *see Burlington*, 114 F.3d at 1418 (Plaintiffs must allege facts are "peculiarly within the defendant's knowledge or control").

2014), and in fact "went so far as to warn investors perfect compliance might not be possible," *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 291 (E.D.N.Y. 2023), *aff'd*, 2024 WL 4023842 (2d Cir. Sept. 3, 2024). Plaintiffs challenge CEO Carlesund's statement that "[w]e perform full due diligence of the operators or aggregators, and we demand them to be licensed," but leave out that he then cautioned "[i]t is the operators' responsibility to comply with the regulation and their own license." (Ex. 30 at 2; AC ¶ 52.) And Defendants' warnings were not "boilerplate" (Opp. 15): Evolution repeatedly warned that "regulatory or enforcement actions" could be "brought against any of [its] customers," which could impact Evolution's "revenue streams" (*e.g.*, Ex. 3 at 50; Ex. 6 at 52; Ex. 7 at 56), and that Evolution may need to "discontinue its services to operators that fail to comply with the relevant regulations" (Ex. 3 at 31; Ex. 6 at 24; Ex. 7 at 25).[9] Courts have repeatedly held that such warnings render statements legally immaterial. *See, e.g.*, *Howard* v. *Arconic Inc.*, 395 F. Supp. 3d 516, 551 (W.D. Pa. 2019) (dismissing where defendant warned of "evolving regulatory standards" that could "have a material and adverse effect on earnings"); *Henry* v. *Futu Holdings Ltd.*, 2024 WL 4285129, at *5 (D.N.J. Sept. 25, 2024) (dismissing where defendant warned of "uncertainties as to how . . . laws and regulations will be interpreted or implemented").

Plaintiffs try to backtrack on the Complaint's theory that "Defendants routinely conducted business with unlicensed customers." (AC ¶ 43.) Conceding that all of Evolution's customers were "technically licensed," Plaintiffs now say that some customers were "reprimanded for engaging in illegal activity." (Opp. 14.) Putting aside that "the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Pa.* v. *PepsiCo*, 836 F.2d 173, 181 (3d Cir.

---

[9]    Plaintiffs argue that "at least two" of Defendants' risk disclosures "were published *after* Evolution's customers were fined" (Opp. 15), but ignore that the warnings were in every Evolution interim, year-end, and annual report that *pre-dated* the fines (*e.g.*, Ex. 3 at 50; Ex. 6 at 52; Ex. 7 at 55 (courts may "determine that the activities of the Group and/or its customers are illegal")).

1988), Plaintiffs' new theory is equally flawed.  At most, Plaintiffs allege that foreign regulators investigated only a handful of Evolution's literally thousands of direct and indirect customers.[10] But "specific instances of unethical . . . practices do not render Defendants' broad statements regarding compliance misleading." *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 581 (S.D.N.Y. 2012).[11]  Evolution never promised that *all* of its thousands of direct and indirect customers would comply with every law or would never be investigated. *See, e.g.*, *Howard*, 395 F. Supp. 3d at 549 (statement that "Compliance Program drives a global culture of . . . compliance, prevention and risk identification" was "not a guarantee that no safety issues would ever occur").

Evolution also had no duty to disclose the alleged investigations of its customers. (Opp. 13.)  It is black-letter law that "companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing'" involving themselves.  *Pelletier* v. *Endo Int'l PLC*, 439 F. Supp. 3d 450, 465 (E.D. Pa. 2020); *see Henry*, 2024 WL 4285129, at *16-17 (no duty to disclose company "was allegedly operating illegally as a securities brokerage in China without the required license"). Plaintiffs cite no cases requiring a company to go one step further and to disclose investigations of its customers.  If Defendants' Compliance Statements triggered a duty to disclose any investigation of a customer or customer's customer, "any company that has a compliance program

---

[10]    Plaintiffs' allegation that Defendants knew "British regulations could get stricter" because they knew "Flutter [Entertainment plc] lobbied the British government against tightening gambling laws" (Opp. 14 n.16) ignores that Defendants repeatedly warned that "[t]he development of laws and regulations related to the supply of gaming services that Evolution provides is a central risk factor" (*e.g.*, Ex. 8 at 5; Ex. 9 at 5; Ex. 10 at 5).  And Defendants specifically cautioned that "in the U.K., [the] Gambling Act Review" would "affect[] us through our operators" if "adjustments . . . limit[] the game play."  (Ex. 29 at 15.)

[11]    *See also ECA, Loc. 134 IBEW Joint Pension Tr.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009) (description of "risk management processes" as "highly disciplined" not "a guarantee that [the company's] choices would prevent failures in its risk management practices"); *In re Career Educ. Corp. Sec. Litig.*, 2006 WL 999988, at *8 (N.D. Ill. Mar. 28, 2006) (allegations about six of "seventy-eight campuses" did not "raise an inference of fraud on a nation-wide level").

and discloses that program in even the most austere terms would be required, *ipso facto*, to disclose any possible deviation that came to its attention." *Menaldi* v. *Och-Ziff Cap. Mgmt. Grp.*, 277 F. Supp. 3d 500, 513 (S.D.N.Y. 2017); *see Howard*, 395 F. Supp. 3d at 552 ("by communicating that changing regulations might affect its exposure," company "did not put" each instance of noncompliance "'at issue' such that it needed to say more").[12]

## B. Defendants' Growth Statements Are Not Actionable.

Plaintiffs do not dispute that they "do not allege that any report of Evolution's past performance was false." (Def. Br. 18.) Instead, Plaintiffs' theory is that Evolution did not meet its "*target* of double-digit organic growth in [its random number generator ('RNG')]" business segment or achieve its "*good potential* for growth" in North America. (Opp. 16, 17 (emphasis added).) But Plaintiffs studiously ignore the settled law that "projections about the company's financial growth . . . are not actionable." *Key Equity Invs.*, 246 F. App'x at 785; *see, e.g.*, *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 537-38 (3d Cir. 1999) (statements about "great potential for profitability" and "expanding distribution channels" inactionable), *abrogated on other grounds by Tellabs*, 551 U.S. 308; *Avaya*, 564 F.3d at 254-55 (statements that "first quarter results position us to meet our goals for the year," and "we are on track to meet our goals for the year" inactionable); *Burlington*, 114 F.3d at 1427 (statement that company "believed it could continue to grow earnings at a faster rate than sales" inactionable).

There is more. Evolution's Growth Statements were repeatedly accompanied by risk warnings that those projections might not be met.[13] For example, Evolution warned that "the

---

[12] Plaintiffs claim that Defendants' "attempt to characterize" Evolution's statement that it conducted "full" due diligence "as an opinion is simply not credible" (Opp. 16), but Plaintiffs do not address any of the cases finding inactionable similar general descriptions of compliance programs (Def. Br. 14-15 (citing cases)).

[13] Plaintiffs ignore that the risk warnings "'render the alleged misrepresentation[s] immaterial' under the bespeaks caution doctrine" (Def. Br. 19), and instead contend that the

path to our goal within RNG will not be linear," that it would "not be a straight line towards that goal," and that there would not be "a quick turnaround in Q2 or Q3." (Ex. 35 at 3, 5; Ex. 36 at 3, 5.) Far from being "generic" or doing "nothing to caution investors" about "negative growth" (Opp. 20), those warnings put investors on notice that Evolution's RNG growth could decline.

In criticizing Defendants' "positive outlook" (*id.* at 17), Plaintiffs ignore that "Rule 10b-5 liability does not attach merely because 'at one time the firm bathes itself in a favorable light' but 'later the firm discloses that things are less rosy,'" *Advanta*, 180 F.3d at 538. Plaintiffs try to avoid this settled law by claiming that a statement by CEO Carlesund that Evolution "launch[ed] . . . a third studio in New Jersey to support the growing demand there" is "objective." (Opp. 18.) Plaintiffs do not allege that studio has anything to do with RNG, which is the business segment for which Plaintiffs assert growth goals were misstated, as opposed to Evolution's live casino segment. At any rate, this allegation does not help Plaintiffs because they do not dispute the statement was true. And Mr. Carlesund's statements that "[w]e see good potential in" North America and "expect a continued high growth rate going forward" (*id.* at 17) were immaterial "optimistic statements," particularly where, as here, Defendants never promised North American growth would be linear or on any specific timeline, *Am. Bus.*, 413 F. Supp. 2d at 399-400 (statement that company "pleased with the demand shown" inactionable); *see In re Datatec Sys., Inc. Sec. Litig.*, 2006 WL 3095951, at *17 (D.N.J. Oct. 30, 2006) (statement that company "expected to contribute to gross margin improvement" inactionable).

## III. PLAINTIFFS HAVE NOT PLED THE REQUIRED STRONG INFERENCE OF SCIENTER.

Fatally for their Complaint, Plaintiffs do not meet their burden to establish scienter by alleging (i) "motive and opportunity to commit fraud," or (ii) "strong circumstantial evidence

---

Growth Statements are "not entitled to PSLRA's safe harbor" (Opp. 19), which Defendants do not argue.

of conscious misbehavior or recklessness." *GSC Partners CDO Fund* v. *Wash.*, 368 F.3d 228, 237 (3d Cir. 2004). Instead, Plaintiffs try to combine "inadequate allegations of motive with inadequate allegations of recklessness." *Kalnit* v. *Eichler*, 264 F.3d 131, 141 (2d Cir. 2001). But "as a matter of elementary arithmetic," Plaintiffs' pleading fails: "'zero plus zero' (plus zero plus zero plus zero) 'cannot equal one.'" *In re Diebold Nixdorf, Inc. Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021).

   **1.**  ***Individual Defendants' Statements.*** As their lead scienter argument, Plaintiffs point to a single statement by CEO Carlesund that "[w]e have a continuous dialogue with all of our regulators." (Opp. 21.) That gets Plaintiffs nowhere because they fail to allege any facts that the Individual Defendants purportedly learned from any "dialogue" with "regulators" indicating that the Compliance Statements were false. Unable to cite a "red flag" that the Individual Defendants ignored, Plaintiffs revert to trying to infer scienter because Evolution's CEO and CFO "h[e]ld themselves out as keenly involved in the Company's affairs." (*Id.*) But that is "precisely the type[] of inference[] which [courts], on numerous occasions, have determined to be inadequate." *Advanta*, 180 F.3d at 539 ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.").[14]

   **2.**  ***Sales of Warrants.*** Plaintiffs try to brush aside as an "alternative narrative[]" the undisputed facts, which this Court must consider on this motion, that Evolution's shareholders pre-approved the Individual Defendants' warrant sales, as part of their compensation packages, including their price and timing of exercise, almost a year *before* the challenged sales occurred. (Opp. 23; *see* Def. Br. 10-11.) This information irrefutably shows that the sales were not "unusual and suspicious" as Plaintiffs claim (AC ¶ 103); instead, the sales were pursuant to

---

[14] Plaintiffs' conclusory allegations that Evolution's "compliance function was understaffed" and lacked an "electronic mechanism" to detect customer regulatory breaches say nothing about the Individual Defendants' knowledge of such non-compliance. (Opp. 12.)

Evolution's pre-approved plan requiring exercise by a specified date. Indeed, if the Individual Defendants had not exercised the warrants when they did, those warrants would have expired and become worthless. (Ex. 38 at 13-14.)

Nor does this "alternative explanation . . . rais[e] a factual dispute." (Opp. 23 (quoting *City of Warren Police & Fire Ret. Sys.* v. *World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 137 (S.D.N.Y. 2020)).) In *Warren*, the defendant's argument that the sales were "to fund the creation of an additional sports league" was not from the complaint or the sources it referenced. 477 F. Supp. 3d at 137. By contrast, the information about Evolution's shareholders' pre-approval of the timing of the warrant sales was published on the same Investor Relations section of Evolution's website and same transaction register of Sweden's financial regulator that Plaintiffs repeatedly cite in their Complaint. (*See, e.g.*, AC ¶¶ 11, 19 & n.5, 41 n.9, 101 & n.12.) It is settled that "courts are permitted to consider a party's website that was integral to or explicitly relied upon in a complaint." *Azurous, Inc.* v. *Kennedy Int'l, Inc.*, 2024 WL 3219663, at *9 n.8 (D.N.J. June 28, 2024). As the Third Circuit has held, "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Burlington*, 114 F.3d at 1426.

Plaintiffs misdescribe *Tellabs* as holding that a court may "not entertain alternative narratives from Defendants." (Opp. 23.) The opposite is true. The Supreme Court specifically directed that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323-24 ("[C]ourts must consider plausible, nonculpable explanations for the defendant's conduct."). *Tellabs* instructed that, on motions to dismiss, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference." *Id.* at 322. Applying this

-11-

governing standard, Plaintiffs have not met their obligation to plead an "inference of scienter" that is "cogent and compelling" and "strong in light of other explanations." *Id.* at 324.

> **3.     *Temporal Proximity.*** Plaintiffs allege that Defendants stated that Evolution provides "content only to licensed operators merely two months before" Australian and Swedish regulators "blocked sites" or "upheld fines" of a handful of Evolution direct or indirect customers. (Opp. 23.) But Plaintiffs do not allege any U.S. or non-U.S. customers were unlicensed, nor do they explain how Defendants could have known in advance of those non-U.S. regulatory actions. And Defendants making statements (with warnings) about potential future growth weeks or months before earnings reports (*id.* at 23-24) is exactly the type of "conclusory" theory of temporal proximity that courts reject. *Castlerock Mgmt., Ltd.* v. *Ultralife Batteries, Inc.*, 68 F. Supp. 2d 480, 488 (D.N.J. 1999). "[T]emporal proximity of events, standing alone, is insufficient circumstantial evidence." *Nat'l Junior Baseball League* v. *Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 553 (D.N.J. 2010).

*     *     *

"[T]aken collectively" (Opp. 20), Plaintiffs' scattershot theories do not raise the required "strong inference of scienter." *Tellabs*, 551 U.S. at 323. Instead, the more "cogent and compelling" inference is that the Individual Defendants made full and accurate disclosures about Evolution's customers' compliance with local gaming laws and Evolution's growth goals. *Id.* at 324.

**CONCLUSION**

The Court should dismiss the Complaint. Because Plaintiffs do not request leave to amend and "fail[] to identify additional facts or legal theories [they] would assert," the dismissal should be with prejudice. *Rauso* v. *Fein*, 2017 WL 3279009, at *2 (E.D. Pa. Aug. 2, 2017).

-12-

February 12, 2025

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr. (admitted *pro hac vice*)
David M.J. Rein (admitted *pro hac vice*)
Julia A. Malkina (admitted *pro hac vice*)
Gulliver Brady (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
giuffrar@sullcrom.com
reind@sullcrom.com
malkinaj@sullcrom.com
bradyg@sullcrom.com

Shannon R. McClure
BLANK ROME LLP
130 North 18th Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 569-5500
shannon.mcclure@blankrome.com

*Counsel for Defendants Evolution AB (publ),*
*Martin Carlesund, and Jacob Kaplan*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2025, the foregoing document was electronically filed with the Clerk of the Court and served upon counsel of record through the Court's ECF filing system.

/s/ *David M.J. Rein*
David M.J. Rein (admitted *pro hac vice*)