IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RACHEL SKOLNICK,** Individually and on Behalf of All Others Similarly Situated, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | |
| **EVOLUTION AB (PUBL), MARTIN CARLESUND, and JACOB KAPLAN**, | : : : | NO. 2:24-cv-0326 |
| Defendants. | : : | |

**Perez, J.**                                                                                                   **April 24, 2025**

### MEMORANDUM

Lead Plaintiffs St. Clair County Employees' Retirement System and City of Sterling Heights Police & Fire Retirement System ("Plaintiffs") assert two counts against Evolution AB (publ) ("Evolution"); its chief executive officer, Martin Carlesund ("Carlesund"); and its chief financial officer, Jacob Kaplan ("Kaplan") (together, "Defendants"). In Count I, Plaintiffs allege that Evolution violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, by making untrue statements or omitting material facts that constituted fraud. ECF No. 40 ¶ 188. In Count II, Plaintiffs allege that Carlesund and Kaplan violated § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, by exercising control over Evolution's operations. *Id.* ¶ 196.

Presently before the Court is Defendants' Motion to Dismiss for lack of personal jurisdiction and failure to state a claim. ECF No. 43-1 at 19–33. For the reasons set forth below, the Motion is granted in part and denied in part. The Court will dismiss Count II with prejudice because it lacks personal jurisdiction over Carlesund and Kaplan. The Court will deny the Motion

as to Count I without prejudice to renew at the close of jurisdictional discovery. The Court will deny Plaintiffs' Motion to Strike (ECF No. 46) as moot.

## I. BACKGROUND

Evolution is a public limited company incorporated and headquartered in Sweden. ECF No. 40 ¶ 10. It is the parent company and controlling shareholder of nine United States subsidiaries, some which are registered to do business in Pennsylvania. *Id.* ¶ 20; ECF No. 43-1 at 13; ECF No. 45 at 13–14. Carlesund and Kaplan are Swedish citizens. ECF No. 40 ¶¶ 13–14; ECF No. 44-3 ¶¶ 17–19; ECF No. 44-4 ¶¶ 8–9. All Defendants have Pennsylvania Gaming and Control Board ("PGCB") licenses allowing them to conduct gaming operations. ECF No. 45 at 13.

Lead Plaintiffs purchased unsponsored Evolution American depository receipts ("ADRs") on the over-the-counter securities market in the United States from February 14, 2019, to October 25, 2023. ECF No. 40 ¶ 7. ADRs are negotiable certificates that represent shares in a foreign company. *Id.* ¶ 127. ADRs are either sponsored or unsponsored; sponsored ADRs are issued at the request of the foreign company, while unsponsored ADRs are "established with little or no involvement of the issuer of the underlying security." *Id.* ¶ 133; ECF No. 43-1 at 17 (citation omitted). However, Plaintiffs allege that unsponsored ADRs "are not sold without the express or implied consent of the foreign issuer." ECF No. 40 ¶ 134.

## II. LEGAL STANDARD

A court must dismiss a complaint when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). In deciding a motion to dismiss, the court accepts all the plaintiff's allegations as true and construes disputed facts in its favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to prove, by a preponderance of the evidence, that jurisdiction exists. *IMO*

*Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998). The plaintiff may not rest solely on pleadings to satisfy its burden. *Patterson by Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990). Instead, it must present a *prima facie* case that demonstrates, with reasonable particularity, a sufficient nexus between the defendant and the forum state. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

### III.     DISCUSSION

#### A.     Plaintiffs have not established personal jurisdiction over Defendants

Determining personal jurisdiction is a two-step inquiry. *IMO Indus.*, 155 F.3d at 258–59. First, the court assesses whether the relevant state long-arm statute allows the exercise of personal jurisdiction. *Id.* at 259. Second, the court determines if the exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Id.*

The Pennsylvania long-arm statute provides for jurisdiction "to the fullest extent allowed under the Constitution[.]" 42 Pa. Cons. Stat. § 5322(b). Under the Due Process Clause, a court may exercise personal jurisdiction over a nonresident only if it has "certain minimum contacts with [Pennsylvania] such that the . . . suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). These due process principles are reflected in the two types of personal jurisdiction: general and specific. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

#### 1.     Plaintiffs have not established general jurisdiction over Defendants

General jurisdiction exists when a nonresident defendant has maintained contacts with the forum state that are so systematic and continuous as to render it essentially at home. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). An individual is at home where he is domiciled, *i.e.*, "his true, fixed[,] and permanent home." *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014). A company is at home in its state of incorporation and principal place of

business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction can also be established by consent. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 144 (2023). Pennsylvania's registration statute requires foreign corporations that wish to do business in the state to consent to its jurisdiction. 15 Pa. C.S. § 411(a).

        *i.*      *Defendants are not "at home" in Pennsylvania*

Plaintiffs argue this Court has general jurisdiction over Carlesund, a citizen of Sweden, because he "visited the United States a number of times per year" in connection with Evolution's subsidiaries. ECF No. 45 at 15. Plaintiffs allege the nature of Carlesund's visits was only "to tend to Evolution's U.S. operations when they began to falter." *Id.* These relatively infrequent and vaguely-defined visits are not the type of contacts that establish general jurisdiction. *See In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 390 (M.D. Pa. 2009) (finding no jurisdiction over executives who "traveled to the United States eighty-five times per year" because courts generally only rely upon business trips for jurisdictional purposes if "travel [was] necessary to effectuate direct sales to consumers, . . . provide warranty and maintenance services, [or] perform in-forum promotional activities").

Plaintiffs further argue that all Defendants are subject to general jurisdiction in the forum because entities, officers, and directors must be "licensed as . . . principal[s]" to obtain gaming licenses in Pennsylvania. 58 Pa. Code §§ 433a.2(a), 433a.4; *see also* ECF No. 45 at 13–14. But Defendants' PGCB licenses do not alone establish the type of contacts required for general jurisdiction to exist. *Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 747 (D.N.J. 1999) (finding that defendant's parent or sister corporation's gaming license was insufficient to establish general jurisdiction); *cf. Muhammad v. Weis*, No. 08-3616, 2009 WL 564441, at *2 (E.D. Pa. Mar. 4, 2009)

(finding that CEO's personal license to conduct business in the forum "d[id] not alone establish . . . continuous and systematic . . . contacts").

>  ii. *Plaintiffs have not established an alter ego relationship between Evolution and its U.S. subsidiaries*

Evolution is a foreign corporation that has not consented to Pennsylvania's jurisdiction. ECF No. 40 ¶ 10. Plaintiffs argue it is nevertheless subject to this Court's general jurisdiction because its subsidiaries are registered to do business in Pennsylvania. ECF No. 45 at 16; ECF No. 45-9 at 2, 4.

"[J]urisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *In re Latex Gloves Products Liab. Litig.*, No. MDL 1148, 2001 WL 964105, at *3 (E.D. Pa. Aug. 22, 2001) (internal citation omitted). Therefore, to determine whether an "alter ego" relationship exists, the court must analyze "the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception." *Id.*

Courts consider ten characteristics indicative of an alter ego relationship when conducting this analysis: (1) ownership of all or most of the subsidiary's stock, (2) common officers and directors, (3) common marketing image, (4) common use of a trademark or logo, (5) common use of employees, (6) integrated sales system, (7) interchange of managerial and supervisory personnel, (8) subsidiary performing business functions which the parent would normally conduct through its own agents or departments, (9) subsidiary acting as marketing arm of or exclusive distributor for the parent, and (10) instruction from the parent to officers of the related corporation. *Id.* at *3–4 (citing *Superior Coal Co. v. Ruhrkohle, A.G.*, 83 F.R.D. 414, 421 (E.D. Pa. 1979)).

Although "[n]o one aspect of the relationship between the two corporations unilaterally disposes of the analysis," *Chocolate*, 641 F. Supp. 2d at 385, the plaintiff must show that the parent is operating the "day-to-day operations of the subsidiary such that the subsidiary" is "a mere department of the parent." *In re Enterprise Rent-A-Car Wage & Hour Emp't Pracs. Litig.*, 735 F. Supp. 2d 277, 318 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012).

Allegations that Evolution has "100% ownership[] and voting rights[] in [it]s U.S. subsidiaries," *e.g.*, ECF No. 45 at 16, are insufficient because complete ownership and voting rights "typify standard parent-subsidiary interactions and do not reflect daily . . . control that is the *sine qua non* of an alter ego relationship." *Chocolate*, 641 F. Supp. 2d at 386. Plaintiffs do raise concerns relevant to the determination of an alter ego relationship, *i.e.*, "Evolution's Pennsylvania subsidiaries did not separately report revenues," ECF No. 45 at 14; "the PGCB determined that Evolution 'remains in control' of . . . the Pennsylvania subsidiaries," *id.* at 16 (internal citation omitted); and Defendants considered the subsidiaries a "single segment" of Evolution's business. *Id.* But Plaintiffs have alleged far less than what courts in this Circuit have found insufficient to establish an alter ego relationship. *See Savin Corp. v. Heritage Copy Prods., Inc.*, 661 F. Supp. 463, 469–471 (M.D. Pa. 1987) (finding that pleading nine of the ten characteristics of an alter ego relationship was not enough because "several facts proved the separateness" of the parent and its subsidiary).

    **2.**    **This Court cannot exercise specific jurisdiction over Defendants because Plaintiffs' claims do not arise out of or relate to Defendants' U.S. contacts**

Courts conduct a three-part inquiry to determine whether specific jurisdiction exists. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). First, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). When a plaintiff's claim is based on

a federal statute authorizing nationwide service of process, such as Section 27 of the Securities Exchange Act, the "forum for analyzing the extent of the defendant's contacts is the United States as a whole." *Pinker*, 292 F.3d at 369. Second, the litigation must "arise out of or relate to" the activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). If these two requirements are met, the court considers whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe*, 326 U.S. at 320).

Defendants purposefully availed themselves of the privilege of conducting activities in Pennsylvania when they were granted "a license by the PGCB." ECF No. 45 at 17; *see* 58 Pa. Code §§ 433a.2. However, "the mere fact that [Defendants are] licensed to do business in [Pennsylvania] will not itself give rise to specific jurisdiction if the cause of action does not arise from that fact." *Muhammad*, 2009 WL 564441, at *2. Plaintiffs' claims arise out of or relate to Evolution's unsponsored ADRs, not the PGCB licenses, and Plaintiffs fail to allege that Defendants have done any act in the United States "with relation to the sale of ADRs." *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1302 (D. Del. 1990). Instead, Plaintiffs' allegations center around actions taken by United States banks. *See* ECF No. 45 at 18.

**B.      Jurisdictional discovery is appropriate because Plaintiffs have alleged facts that suggest the possibility of general jurisdiction over Evolution**

"If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts . . . ,' the . . . right to conduct jurisdictional discovery should be sustained." *Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 646 (E.D. Pa. 2018) (quoting *Toys "R" Us v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). This is a "liberal" standard, *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-2642, 2022 WL 309292, at *1 (E.D. Pa. Feb. 1, 2022), so unless the "claim is clearly frivolous," the court should grant

jurisdictional discovery. *Toys "R" Us*, 318 F.3d at 456 (internal citation omitted). Jurisdictional discovery is "particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

Plaintiffs have not produced sufficient evidence to establish general jurisdiction over Evolution through an alter ego relationship. However, Plaintiffs face the "difficult task of trying to establish personal jurisdiction over a corporation." *Id.* Courts have allowed limited jurisdictional discovery even when the plaintiffs' allegations were "entirely conclusory" because the action involved "well-known and large corporate entities, with numerous corporate forms, and operations wide in scope." *Marchionda v. Embassy Suites, Inc.*, 122 F. Supp. 3d 208, 211 (D.N.J. 2015).

Plaintiffs allege that Evolution "operated a unitary business . . . with [it]s . . . subsidiaries" such that it "controlled the[ir] internal affairs and operations" and they "became mere instrumentalities of their parent." ECF No. 40 ¶ 3. Plaintiffs rely on Evolution's annual reports to confirm that the "subsidiaries did not separately report revenues." ECF No. 45 at 16. Moreover, Plaintiffs emphasize that the PGCB outlined the ownership structure of Evolution's subsidiaries, determined that Evolution "remain[ed] in control," and found that the new corporate structure "was merely a reorganization" of shares. *See* ECF No. 45-5 ¶¶ 24–28. Finally, Plaintiffs point to Carlesund's role and responsibilities as "Group CEO," which include "overseeing the company's day-to-day operations" and leading the "Group" (Evolution and its subsidiaries) as though it is "a single segment." ECF No. 44-1 at 96, 123.

This Court cannot say that Plaintiffs present a frivolous claim. Given the complex corporate structure of Evolution (a global corporation with many subsidiaries), *see Marchionda*, 122 F. Supp. 3d at 211, and that Plaintiffs did plead with reasonable particularity the existence of requisite

contacts, *see* ECF No. 45-5 ¶¶ 24–27, discovery as to whether this Court may exercise jurisdiction over Evolution is appropriate.

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Count II with prejudice. The Court will allow jurisdictional discovery on the limited issue of whether an alter ego relationship exists between Evolution and its Unites States subsidiaries. The Court will deny the Motion to Dismiss as to Count I without prejudice to renew at the close of jurisdictional discovery. Finally, the Court will deny Plaintiffs' Motion to Strike as moot. An appropriate Order follows.