# EXHIBIT 13

DocuSign Envelope ID: EEB158CD-0DC8-429D-849B-19C7442E1B9D



## *Inspection Agreement*

Effective, (August 29, 2022) and subject to all terms, conditions, and limitations specified in this Agreement, Evolution US LLC ("Customer") hereby engages Davis-Ulmer Sprinkler Company, Inc. dba **Rich Fire Protection Company, Inc. of 34 Somerset Ave, Pleasantville, NJ 08232** ("Company") to perform inspection services at the premises specified in Section I below (the "Property"), and Company agrees to perform such services subject to all terms, conditions and limitations specified in this Agreement and as outlined in Section II.

### SECTION I – CUSTOMER & PROPERTY INFORMATION

**Property:**        Evolution US LLC                    **Billing Address (If different from Property):**
**Address:**         Hard Rock Hotel & Casino            **SAME**
                     1000 Boardwalk
                     Atlantic City NJ, 08401
**Phone:**           609-855-7448                        **Phone:**
**Fax:**             _____                              **Fax:**    _____
                                                         **E-Mail:** Aabdelsalam@evolution.com

**Property Owner** (If different from Customer):

_____

If Customer is not the owner of the Property (i) Customer represents, warrants and covenants to Company that Customer is authorized by the owner to enter into this Agreement and allow Company to access the Property and perform the services described below, and (ii) Customer authorizes Company to communicate the results of any inspection directly to the owner.

### SECTION II – INSPECTION

Customer engages Company-to perform a
☐ single ☐ monthly ☐ quarterly ☐ semi-annual ☒ annual ☐ other (see frequencies below) inspection(s) of the automatic fire protection and/or alarm/security equipment installed on or within the Property.

Systems to be inspected:
Annual – Fire Extinguishers (Not Including Maintenance & Recharges)
      Twelve (12) Extinguishers

The Scopes(s) of Work are included. Actual inspection date(s) will be determined by Company.

### SECTION III – TERM, INSPECTION FEE, AND PAYMENT

The term of this Agreement shall be for a period of Three (3) years. **2022, 2023, 2024**

Customer agrees to pay the **total annual sum of $120.00.** Customer will be invoiced following **each inspection,** the sum of **$120.00.** Specified fee does not include any applicable sales or other tax. Customer is responsible for all applicable taxes.

Company will issue an invoice promptly upon completion of each inspection. Customer will pay each invoice in full, without any setoff or deduction whatsoever, no later than 30 days after receipt of invoice. Any amounts past due will be subject to a finance charge equal to the lesser of 1.5% per month or the maximum legal rate. Customer agrees to reimburse Company for all costs of collection, including attorneys' fees.

Property:
*Licensed by the State of New Jersey, Division of Fire Safety. Permit ID#P01490*

Exhibit

Defendant 018

15th May 2025

DocuSign Envelope ID: EEB158CD-0DC8-429D-849B-19C7442E1B9D

## SECTION IV - OTHER TERMS AND LIMITATIONS

1. This Agreement is for inspection services only. If Customer wants Company to make any repairs, alterations or replacements as a result of the inspection services performed pursuant to this Agreement, such work and the additional compensation to Company must be specified in a separate written agreement between Company and Customer.

2. Any additional system equipment added to the Property after the date of this Agreement or not otherwise specified in Section II of this Agreement is not included in the inspection services to be provided pursuant to this Agreement. Inclusion of any such other equipment will require execution of an amendment to this agreement and adjustment of the inspection fee.

3. The inspection services provided by Company pursuant to this Agreement are limited to an evaluation of the functionality of the equipment identified in Section II above. Company will not evaluate or express any opinion as to whether the design and/or installation of the system are suitable for the Property or the operations at the Property.

4. Company's inspection is limited to a visual inspection of external readily accessible parts of the system and will not include every component including but not limited to sprinkler heads, pipe, fittings, hangers, pull stations, smoke detectors, conduit wire or other parts of the system being inspected. Company will only inspect a representative number or sample of the sprinkler heads, pipes, hangers, valves or other devices and equipment in their current position. THEREFORE, BY CONDUCTING ITS INSPECTION UNDER THIS AGREEMENT, COMPANY DOES NOT GUARANTEE OR WARRANT THE CONDITION OR OPERATION OF EVERY PIPE, SPRINKLER HEAD OR OTHER PART OF THE FIRE PROTECTION AND/OR FIRE ALARM/SECURITY SYSTEM ON THE PROPERTY.

5. AS A MATERIAL INDUCEMENT FOR COMPANY TO PROVIDE THE SERVICES SPECIFIED IN THIS AGREEMENT AT THE INSPECTION FEE QUOTED IN THIS AGREEMENT, CUSTOMER AGREES THAT COMPANY'S LIABILITY TO CUSTOMER AND ALL THIRD PARTIES WITH RESPECT TO ANY CLAIM UNDER THIS AGREEMENT, OR ARISING FROM THE SERVICES FURNISHED BY COMPANY, SHALL BE LIMITED TO THE LESSER OF $1000.00 OR THE TOTAL CONSIDERATION ACTUALLY RECEIVED BY COMPANY UNDER THIS AGREEMENT. THE FOREGOING LIMITATION SHALL APPLY TO ALL CLAIMS REGARDLESS OF THE NATURE THEREOF, INCLUDING CLAIMS ASSERTED AS A BREACH OF CONTRACT, A BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE. IN NO EVENT SHALL COMPANY BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, SPECIAL, INDIRECT, OR PUNITIVE DAMAGES, OR DAMAGES FOR LOST PROFITS. If Customer desires Company to accept an increased limit of liability for the services provided under this Agreement, Company will provide an alternate inspection fee quote reflecting such increased limit, provided, however, that the increased limit shall be effective only upon Company's and Customer's execution of a replacement agreement confirming the same and Customer's payment of the alternate fee.

6. The Company is not responsible for any damages due to: (1) incompatibility of materials within a CPVC piping system, or (2) corrosion, or deterioration of piping due to Customer's water supply, atmospheric conditions, soil quality, or any other condition at Customer's facility that adversely affects the integrity of the fire protection system.

7. Company, following each inspection, will provide to Customer a written "Report of Inspection" ("Report"). If required and/or with prior written authorization, Company will provide copies of the Report to the local or state authority having jurisdiction on behalf of Customer. If requested by Customer, a copy of the Report will also be forwarded to Customer's insurance company. The Report and recommendations, if any, by Company are only advisory in nature and are intended to assist Customer in reducing the possibility of loss to the Property by indicating obvious defects or impairments to the system(s) which were discovered by Company's inspection, and which should receive prompt attention.

8. Customer agrees to obtain and shall be solely responsible to maintain property and casualty insurance for the Property, all contents therein, and operations performed within or around the Property. No insurance company, insurer or bonding company or their successors or assigns shall have any right of subrogation or otherwise against Company arising out of this Agreement or the services provided by Company pursuant to this Agreement.

9. Customer agrees to indemnify, defend and hold harmless Company, its agents, and employees from and against any and all claims, demands, suits, liabilities, damages, judgments, losses and expenses (including, without

DocuSign Envelope ID: EEB158CD-0DC8-429D-849B-19C7442E1B9D

limitation, attorneys' fees) which may be asserted against or incurred by Company by any third party arising out of or related to this Agreement or the services provided by Company pursuant to this Agreement.

10. Company will make every reasonable effort to prevent the discharge of water into or onto areas of landscaping, decorative pavement, etc., at the Property, however it is Customer's responsibility to provide sufficient and readily accessible means to accept the full flow of water that may be required by tests as determined by the type of inspection and to take measures to eliminate the formation of ice in any area where a slip and fall hazard could occur.

11. This Agreement may not be assigned by Customer without the written consent of Company.

12. This Agreement may be signed in counterparts; a signed facsimile, photocopy, and/or electronic mail of this Agreement shall be as binding on both parties just as though this Agreement were executed in its original, pre-printed form.

13. This Agreement constitutes the entire Agreement between Company and Customer regarding the subject matter hereof and supersedes all prior agreements and understandings relating thereto. Although Customer for its convenience or in furtherance of its internal procedures may issue to Company a purchase order, order acknowledgement or similar form in connection with the services provided by Company pursuant to this Agreement, no term or condition in any such form that is different from or in addition to the terms set forth in this Agreement shall be applicable, and all such different or additional terms shall be ineffective and void. This Agreement cannot be amended or modified except by a writing signed by Customer and Company.

14. Customer acknowledges Company is relying upon the accuracy of the information regarding Customer and the Property set forth in Sections I of this Agreement. Customer represents that all such information is complete and accurate as of the date on which this Agreement is signed by Customer. Customer will promptly advise Company in writing of any change to such information.

15. Other inclusions, exclusions, or attachments (if any)

## SECTION V: THIRD PARTY AUTHORIZATION

Customer requests and authorizes Company to provide the following designated third parties with the Report information outlined below:

## SECTION VI: ACCEPTANCE AND SIGNATURE

By signing above, Customer acknowledges that it has reviewed, understands and agrees to all terms and conditions of this Agreement including, without limitation, the Scope(s) of Work furnished by Company with this Agreement.

The inspection fee quoted is for acceptance within thirty (30) days from Company's presentation of this Agreement to Customer. If not accepted by Customer within such 30-day period, Company will be pleased to submit a revised quotation. Agreement is not binding on Company until credit approval for Customer is issued by Company. If required, a Credit Application is attached.

**Customer: *Evolution US LLC***

SIGNATURE: *Jacob Claesson*
NAME: Jacob Claesson
TITLE: Head of Operations
DATE: 10/5/2022

**Davis-Ulmer Sprinkler Company, Inc.**
**DBA Rich Fire Protection**

SIGNATURE: *Andrew*
NAME: Andrew Kyryczenko
TITLE: Fire Extinguisher Technician
DATE: 05/12/2022

Property :
*Licensed by the State of New Jersey, Division of Fire Safety. Permit ID#P01490*

DocuSign Envelope ID: EEB158CD-0DC8-429D-849B-19C7442E1B9D



# CERTIFICATION & INSPECTION OF FIRE EXTINGUISHERS

The State Fire Code requires you to inspect, test, and maintain portable fire extinguishers in an operative condition. All inspection, testing and maintenance records are required to be kept on file at the premises. Any questions concerning regulatory requirements for fire protection systems should be directed to your municipal code enforcement authority. Rich Fire will notify you in writing of any condition or deficiency discovered requiring correction or repair. Any authorized repair/maintenance work will be performed either as quoted or on a time and material basis. **Rich Fire Protection relies solely on the Owner to provide a list including location of each and every portable fire extinguisher to be inspected. Owner will be responsible for keeping this list current and will report any changes to Rich Fire Protection prior to inspection.**

## SCOPE OF WORK – ANNUAL INSPECTION

- (Annually) Inspection of cylinder for physical damage.
- (Annually) Check gauge for correct cylinder pressure.
- (Annually) Inspection of nozzle, valve, hose assemblies.
- (Annually) Verify that safety seals and tamper indicators are not broken or missing.
- (Annually) Verify that there is no obstruction to access or visibility.
- (Annually) Confirm that operating instructions on nameplate are legible and facing outward.
- (Annually) Remove existing inspection tag (if applicable) and install new inspection tag dated the month and year the inspection was completed and name or initials of person completing the inspection.

## SCOPE OF WORK – 6 YEAR MAINTENANCE

- (Every 6 Years) Stored pressure extinguishers must be emptied and put through a full internal inspection and appropriate maintenance procedures every 6 years from manufacture date. Including a thorough examination of all mechanical parts, extinguishing agent and expellant. A label marking the 6-year inspection is placed on the extinguisher.

## SCOPE OF WORK – HYDROSTATIC TESTING

- (As Noted) Periodic test mandated by NFPA requiring highly specialized test equipment to ensure the integrity of an extinguisher or cylinder at its listed operating pressure. Dry chemical, Halon and other clean agent extinguishers are to be hydro tested at 12 year intervals. High-pressure carbon dioxide extinguishers are to be tested at 5 year intervals. Once these extinguishers have gone through the 12-year hydro testing a special label is placed on the extinguisher showing the year of the test

## Excluded Work:

- Visual inspection of portable fire extinguishers in inaccessible spaces.
- Any and all NFPA, State, and local requirements in excess of above stated.

Property:

*Licensed by the State of New Jersey, Division of Fire Safety, Permit ID#P01490*