**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

RACHEL SKOLNICK,
individually and on behalf of all others
similarly situated,

     Plaintiff,

    v.

EVOLUTION AB (PUBL), MARTIN
CARLESUND, and JACOB KAPLAN,

     Defendants.

Civ. Action No. 2:24-cv-00326-MRP

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**EVOLUTION AB'S MOTION TO DISMISS THE AMENDED COMPLAINT**
**FOR LACK OF *ALTER EGO* PERSONAL JURISDICTION**

Shannon McClure
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 569-5500
shannon.mcclure@blankrome.com

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
David M.J. Rein (admitted *pro hac vice*)
Julia A. Malkina (admitted *pro hac vice*)
Gulliver Brady (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
giuffrar@sullcrom.com
reind@sullcrom.com
malkinaj@sullcrom.com
bradyg@sullcrom.com

*Counsel for Defendant Evolution AB (publ)*

June 27, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .....................................................................................................................1

I.      PLAINTIFFS DO NOT MEET THEIR BURDEN TO ESTABLISH ALTER
EGO JURISDICTION OVER EVOLUTION AB ...........................................................1

        A.     Evolution AB Did Not Control the Subsidiaries' Day-to-Day
Operations (Factor 10) ..................................................................................2

        B.     The Subsidiaries Had Separate Directors and Officers (Factor 2)...........................4

        C.     The Subsidiaries Had Separate Management (Factor 7)........................................4

        D.     The Subsidiaries Had Separate Employees (Factor 5).............................................5

        E.     The Subsidiaries Did Not Perform Evolution AB's Functions
(Factor 8).............................................................................................................5

        F.     The Subsidiaries Were Not Evolution AB's Marketing Arms or
Distributors (Factors 6 and 9) ......................................................................6

        G.     Common Branding Cannot Establish Alter Ego Jurisdiction
(Factors 3 and 4) ..........................................................................................6

        H.     Ownership Does Not Establish Alter Ego Jurisdiction (Factor 1) .........................7

II.     PLAINTIFFS STILL DO NOT ALLEGE SECURITIES FRAUD ..............................7

CONCLUSION ...................................................................................................................7

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Action Manufacturing Co.* v. *Simon Wrecking Co.*,
 375 F. Supp. 2d 411 (E.D. Pa. 2005) ...................................................................4, 5, 7

*Bassil* v. *Starwood Hotels & Resorts Worldwide, Inc.*,
 2014 WL 4795001 (E.D. Pa. Sept. 26, 2014) ...............................................................4

*Deardorff* v. *Cellular Sales of Knoxville, Inc.*,
 2022 WL 309292 (E.D. Pa. Feb. 1, 2022) ...............................................................1, 3

*Directory Dividends, Inc.* v. *SBC Communications, Inc.*,
 2003 WL 21961448 (E.D. Pa. July 2, 2003)..................................................................4

*Gammino* v. *Verizon Communications, Inc.*,
 2005 WL 3560799 (E.D. Pa. Dec. 27, 2005)..................................................................3

*In re Chocolate Confectionary Antitrust Litigation*,
 641 F. Supp. 2d 367 (M.D. Pa. 2009) .......................................................................5, 6

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*,
 735 F. Supp. 2d 277 (W.D. Pa. 2010)........................................................................3, 7

*In re Western States Wholesale Natural Gas Antitrust Litigation*,
 2009 WL 455653 (D. Nev. Feb. 23, 2009).....................................................................7

*Lapine* v. *Materion Corp.*,
 2016 WL 3959081 (E.D. Pa. July 22, 2016)...................................................................7

*Neopart Transit, LLC* v. *CBM N.A. Inc.*,
 314 F. Supp. 3d 628 (E.D. Pa. 2018) .............................................................................2

*Reynolds* v. *Turning Point Holding Co.*,
 2020 WL 953279 (E.D. Pa. Feb. 26, 2020) ...................................................................3

*Riad* v. *Porsche Cars North America, Inc.*,
 657 F. Supp. 3d 695 (E.D. Pa. 2023) .........................................................................1, 7

*Simeone ex rel. Estate of Albert Francis Simeone, Jr.* v. *Bombardier-Rotax GmbH*,
 360 F. Supp. 2d 665 (E.D. Pa. 2005) .............................................................................3

*Smith* v. *Avon Products, Inc.*,
 2019 WL 921461 (N.D. Ala. Feb. 25, 2019) ..................................................................7

*UHS of Delaware, Inc.* v. *United Health Services, Inc.*,
    2015 WL 539736 (M.D. Pa. Feb. 10, 2015) ............................................................................3

*United States* v. *Bestfoods*,
    524 U.S. 51 (1998).................................................................................................................5

*Zombeck* v. *Amada Co.*,
    2007 WL 4105231 (W.D. Pa. Nov. 15, 2007) .......................................................................4

**Statutes**

15 U.S.C. § 78u-4(b)........................................................................................................1, 7

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................7

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition ("Opp.") to Evolution AB's renewed motion to dismiss confirms that there is no basis to find alter ego jurisdiction here.  And that remains true even if the Court permits Plaintiffs to file their proposed Second Amended Complaint ("SAC"), which merely regurgitates the same factual allegations that Plaintiffs make in their Opposition.

Plaintiffs identify nothing about the relationship between Evolution AB (publ) ("Evolution AB") and Evolution Malta Limited ("Evolution Malta"), Evolution US LLC ("Evolution US"), and NetEnt Americas LLC ("NetEnt") (together, "Subsidiaries"), that differs from typical parent-subsidiary relationships in any corporate group.  This is not enough to satisfy Plaintiffs' burden to adduce evidence that "transcend[s] the bounds of the level of supervision present in [a] typical parent-subsidiary relationship."  *Deardorff* v. *Cellular Sales of Knoxville, Inc.*, 2022 WL 309292, at *7 (E.D. Pa. Feb. 1, 2022).  Plaintiffs instead rely on ordinary-course facts, such as that Evolution AB has some groupwide policies and trainings, and that Subsidiary managers consulted with and reported to Evolution AB managers.  In the face of Evolution AB's extensive showing that the Subsidiaries handled their own "day-to-day operations," Plaintiffs cannot show, as they must, that Evolution AB exercised undue "control" over the Subsidiaries. *Riad* v. *Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 701 (E.D. Pa. 2023).

Finally, as explained in Evolution AB's initial motion to dismiss, the Court should dismiss for the separate and independent reason that the proposed SAC does not meet the Private Securities Litigation Reform Act's ("PSLRA") particularized pleading standards.

**ARGUMENT**

**I.     PLAINTIFFS DO NOT MEET THEIR BURDEN TO ESTABLISH ALTER EGO JURISDICTION OVER EVOLUTION AB.**

In their Opposition, Plaintiffs concede their "burden 'to prove, by a preponderance

of the evidence, that jurisdiction exists.'" (Opp. 2 (quoting ECF No. 54 ("Op.") at 2-3).) Plaintiffs

do not dispute that this burden is "notoriously difficult," and that "[t]here is a strong presumption

against . . . deeming companies alter egos of each other." (ECF No. 60-1 ("MTD") at 10 (quoting

*Trinity Indus., Inc.* v. *Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018), and *Fuhrman* v.

*Mawyer*, 2023 WL 5672314, at *7 (M.D. Pa. Sept. 1, 2023)).) Plaintiffs also do not contest that

they must plead alter ego jurisdiction over Evolution AB as of *January 23, 2024*, when their initial

complaint was filed.[1] (MTD 1.) Whether assessed based on the evidence submitted on this motion,

or the allegations in Plaintiffs' proposed SAC parroting the same evidence, Plaintiffs fall short.

A.    **Evolution AB Did Not Control Its Subsidiaries' Day-to-Day Operations (Factor 10).**

Plaintiffs do not dispute that "[t]he most significant pieces of evidence" relevant to

a showing of alter ego jurisdiction concern "control over [] subsidiaries' day-to-day functions."

*Neopart Transit, LLC* v. *CBM N.A.*, 314 F. Supp. 3d 628, 645 (E.D. Pa. 2018). Tellingly, Plaintiffs

relegate that issue to last in their Opposition. (Opp. 14-19.) Rather than address the myriad ways

in which the Subsidiaries manage their own operations, Plaintiffs dismiss the Subsidiaries as

merely handling "ministerial tasks" and conclusorily assert, without evidence, that Evolution AB

"controlled every critical business function undertaken by the [S]ubsidiaries." (Opp. 6, 15.) But

Plaintiffs have no response to the undisputed evidence that the Subsidiaries (i) had their own

management; (ii) hired, fired, and paid their own employees; (iii) entered into their own leases and

vendor contracts; (iv) handled their own taxes and banking; (v) conducted their own marketing;

and (vi) prepared their own financial statements. (MTD 3-7, 12.) Far from being "ministerial,"

these are exactly the types of responsibilities that establish that the Subsidiaries were not Evolution

---

[1]    Notwithstanding this uncontroverted standard, Plaintiffs press for alter ego jurisdiction based on evidence or allegations from "the Class Period" of February 14, 2019 to October 25, 2023. (*E.g.*, Opp. 7, 8, 11, 18; SAC ¶¶ 4, 6, 9, 10, 13, 16, 17, 20, 31.)

AB's alter ego as of January 23, 2024 or even during the proposed Class Period.  *See, e.g.*, *Reynolds* v. *Turning Point Holding Co.*, 2020 WL 953279, at *4 (E.D. Pa. Feb. 26, 2020) (no alter ego where subsidiaries' "own managerial personnel . . . 'control the day-to-day ground level operations'").

Plaintiffs' "alter ego" theory boils down to the unremarkable fact that Evolution AB had some "group-wide policies" and trainings. (Opp. 15; SAC ¶¶ 18-25.)  But this is true of almost any corporate group.   Courts thus recognize that "announcement of general policies and procedures" does not "exceed the boundaries of a traditional parent-subsidiary relationship" and thus does not show alter ego status.  *UHS of Del., Inc.* v. *United Health Servs., Inc.*, 2015 WL 539736, at *3 (M.D. Pa. Feb. 10, 2015).  Nothing about Evolution AB's Code of Conduct or its other policies or trainings establishes that Evolution AB "exercise[d] control over [subsidiaries'] daily operations."  *Deardorff*, 2022 WL 309292, at *7; *see Gammino* v. *Verizon Commc'ns, Inc.*, 2005 WL 3560799, at *3 (E.D. Pa. Dec. 27, 2005) (no alter ego where parent's annual report said it had "a rigorous code of conduct which applies to all employees worldwide").

There is more.  Plaintiffs concede that the Subsidiaries had their own company-specific policies (MTD 13), but note that the groupwide Code of Conduct "trumps" any inconsistencies (Opp. 17; SAC ¶ 22).  Plaintiffs identify no inconsistencies.   In fact, the Subsidiaries had many detailed policies not in the groupwide Code of Conduct, such as policies concerning "communication," "human resources," "compensation and benefits," "working environment," and "game floor information."  (MTD Ex. 4.)  Evolution AB's groupwide policies and trainings thus do not establish the "extraordinary level of control of defendant parent over [the subsidiary]" necessary for alter ego jurisdiction.  *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 324 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012).

Plaintiffs' cited cases (Opp. 15) demonstrate what is missing here.  In *Simeone* v.

*Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 676-77 (E.D. Pa. 2005), the parent "governed staffing issues ranging from hiring to compensation," "performance appraisals, job classification, salary structure, and promotion," treating the subsidiary as a "corporate shell."  Here, the fully functioning Subsidiaries handled these roles.  (MTD 15-16.)  Unlike in *Directory Dividends, Inc.* v. *SBC Communications, Inc.*, where the parent controlled "service agreements, contracts and customer bills," and there was "considerable confusion as to who works for whom," 2003 WL 21961448, at \*5-6 (E.D. Pa. July 2, 2003), the Subsidiaries controlled those matters, and there is no alleged ambiguity as to anyone's employment (*see* MTD 15-17).  And *Bassil* v. *Starwood Hotels & Resorts Worldwide, Inc.* is distinguishable because Evolution AB and the Subsidiaries "deal with each other as separate legal entities," 2014 WL 4795001, at \*6 (E.D. Pa. Sept. 26, 2014), as shown by the arm's-length services agreements (MTD 7-8).

### B.    The Subsidiaries Had Separate Directors and Officers (Factor 2).

Plaintiffs do not dispute that the Subsidiaries had no overlapping directors with Evolution AB.  (MTD 13.)  Plaintiffs allege that two Evolution AB *officers* (Martin Carlesund and Jesper von Bahr) also served as Subsidiary directors.[2]  (Opp. 7-8; SAC ¶¶ 13-14.)  This does not support alter ego jurisdiction.  *See, e.g.*, *Action Mfg.* v. *Simon Wrecking*, 375 F. Supp. 2d 411, 424 (E.D. Pa. 2005) ("it is 'normal for a parent and subsidiary to have *identical* directors and officers'") (emphasis added); *Zombeck* v. *Amada Co.*, 2007 WL 4105231, at \*8 (W.D. Pa. Nov. 15, 2007) ("commonality of officers and directors [is] not alone sufficient to establish . . . alter ego").

### C.    The Subsidiaries Had Separate Management (Factor 7).

Plaintiffs do not dispute that Evolution US and Evolution Malta had their own

---

[2]    Plaintiffs refer to Mr. Carlesund and Mr. von Bahr as "officers" of NetEnt.  (Opp. 7; SAC ¶ 14.)  The 2020 exhibit Plaintiffs rely on describes Mr. Carlesund and Mr. von Bahr's appointment as "Director, President, Treasurer and Secretary" and "Director," respectively.  (Opp. Ex. 9 ¶ 6.2.)  They also signed NetEnt Board resolutions, including in 2023, as "Directors."  (*E.g.*, MTD Ex. 25.)

management teams separate from Evolution AB.  (MTD 15.)  Instead, Plaintiffs merely allege that by signing board resolutions and, in Mr. Carlesund's case, a lease for Evolution US, Mr. Carlesund and Mr. von Bahr "controlled" Evolution US's management.  (Opp. 8; SAC ¶ 15.)  But approving board resolutions is the role of directors at any company, and the lease was signed expressly in Mr. Carlesund's "director" capacity.  (MTD Ex. 11 at 35.)  As the Supreme Court has explained, "courts generally presume 'that the directors are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary.'" *United States* v. *Bestfoods*, 524 U.S. 51, 69 (1998).

### D.    The Subsidiaries Had Separate Employees (Factor 5).

Plaintiffs do not dispute that no employees were employed by both Evolution AB and the Subsidiaries, nor that the Subsidiaries hired, paid, and fired their thousands of employees. (MTD 3-4, 15-16.)  Instead, Plaintiffs rely on the unremarkable facts that (i) Evolution AB and Evolution US's CEOs met to discuss "business performance," and (ii) some Subsidiary officers participated in Extended Group Management, a committee of officers from Evolution AB and its subsidiaries that reported on business matters and discussed strategy.  (Opp. 8-9; SAC ¶¶ 16-17; *see* MTD at 8.)  Reporting and supervisory arrangements, such as these, between a subsidiary and parent are typical of any corporate group.  Indeed, courts recognize that it is common for "officers of any corporation that owns the stock of another" to supervise the subsidiary, "and the discharge of that supervision alone is not enough to subject to parent to . . . jurisdiction." *Action Mfg.*, 375 F. Supp. 2d at 423.  Such ordinary-course reporting and supervision cannot establish the "autocratic control over other members of the corporate group" required for alter ego jurisdiction.  *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 392 (M.D. Pa. 2009).

### E.    The Subsidiaries Did Not Perform Evolution AB's Functions (Factor 8).

Plaintiffs concede that Evolution AB "is a holding company," but claim "that is not necessarily fatal to an alter ego showing" where "the parent controlled the subsidiaries'

operations." (Opp. 14.)  For the reasons in Defendants' motion to dismiss and this reply, Plaintiffs fail to demonstrate the required "autocratic control."  *Chocolate*, 641 F. Supp. 2d at 392.

**F.    The Subsidiaries Were Not Evolution AB's Marketing Arms or Distributors (Factors 6 and 9).**

Plaintiffs do not dispute that (i) Evolution AB operated no studios and developed no products; (ii) Evolution Malta, not Evolution AB, owned intellectual property used in the Subsidiaries' products; and (iii) the Subsidiaries conducted their own marketing and sales. (MTD 7, 17.)  Instead, Plaintiffs argue that the Subsidiaries "share a unified approach to sales, marketing, and distribution of products." (Opp. 13; SAC ¶ 29.)  Plaintiffs point to no case finding alter ego jurisdiction based on a "unified approach," as opposed to undue control.  And Plaintiffs' faulty theory is factually unsupported.  For example, Plaintiffs assert that the Subsidiaries "only provide products that are produced or sourced from" Evolution AB (Opp. 13; SAC ¶¶ 27-28), but identify no products that Evolution AB produces or sources.  There are none.  (*See* MTD 7, 17.)

**G.    Common Branding Cannot Establish Alter Ego Jurisdiction (Factors 3 and 4).**

Plaintiffs' allegations that Evolution AB and the Subsidiaries share a "common marketing image" do not establish alter ego jurisdiction.  (Opp. 10; SAC ¶ 30.)  Plaintiffs assert that statements in Evolution AB's Annual Reports regarding groupwide performance of Evolution AB and its subsidiaries show they held themselves out as "a single business entity."  (Opp. 11; SAC ¶¶ 6-7, 9.)  Like most parent companies, Evolution AB presented its financial results on a consolidated basis with its subsidiaries and thus, by definition, Evolution AB was required to "attribut[e] . . . results" from its subsidiaries into its Annual Reports.  (Opp. 11; SAC ¶ 31.)

Nor is Plaintiffs' alter ego theory supported by statements in Evolution AB's Annual Reports that the "Group CEO considers the Group to consist of a single segment, *i.e.* the provision of solutions for Live Casino and associated services to gaming operators."  (Opp. 11; SAC ¶ 9.)

Courts have rejected repeatedly similar theories.[3]  And Plaintiffs ignore that the Subsidiaries' "distinct corporate functions" weigh against any alter ego finding.  *Riad*, 657 F. Supp. 3d at 702.

Nor does the Subsidiaries' alleged sharing of a logo and website with Evolution AB establish alter ego jurisdiction.  (Opp. 12-13; SAC ¶ 30.)  That a company "is portrayed as a single brand to the public . . . does not demonstrate the necessary control . . . over the subsidiaries." *Enter.*, 735 F. Supp. 2d at 323.  "[A]ttributing a subsidiary's contacts to its parent simply because both operate under the same brand name," as Plaintiffs demand, would "undermine fundamental corporate theory."  *Lapine* v. *Materion Corp.*, 2016 WL 3959081, at *5 (E.D. Pa. July 22, 2016).

**H.    Ownership Does Not Establish Alter Ego Jurisdiction (Factor 1).**

Plaintiffs concede that Evolution AB's ownership of the Subsidiaries is "not dispositive of the alter ego determination."  (Opp. 6.)  In fact, as this Court correctly held, "[j]urisdiction cannot be premised on corporate affiliation or stock ownership alone."  (Op. 5.)

**II.    PLAINTIFFS STILL DO NOT ALLEGE SECURITIES FRAUD.**

As explained in Evolution AB's initial motion to dismiss, this case should be dismissed for failure to plead a securities fraud claim under the PSLRA and Federal Rule of Civil Procedure 9(b).

**CONCLUSION**

The Complaint (or if leave to amend is granted, the SAC) should be dismissed with prejudice.

---

[3]    *See, e.g.*, *Action Mfg.*, 375 F. Supp. 2d at 423 ("references in the parent's annual report to subsidiaries . . . as divisions of the parent company do not establish . . . alter ego"); *Smith* v. *Avon Prods., Inc.*, 2019 WL 921461, at *11 (N.D. Ala. Feb. 25, 2019) (parent's reference to subsidiary "as a 'business unit' or 'division' of [parent] does not demonstrate [parent]'s control and dominion over [subsidiary]") (capitalization omitted); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2009 WL 455653, at *8-12 (D. Nev. Feb. 23, 2009) (no alter ego despite parent stating it was "an integrated . . . company," "promulgat[ing] [ ] general policies for its subsidiaries," and receiving "daily reporting" from them).

DATED:  June 27, 2025                              Respectfully submitted,


 /s/ *Shannon McClure*                              /s/ *Robert J. Giuffra, Jr.*


Shannon McClure                                    Robert J. Giuffra, Jr. (admitted *pro hac vice*)
BLANK ROME LLP                                     David M.J. Rein (admitted *pro hac vice*)
One Logan Square                                   Julia A. Malkina (admitted *pro hac vice*)
130 North 18th Street                              Gulliver Brady (admitted *pro hac vice*)
Philadelphia, Pennsylvania  19103                  SULLIVAN & CROMWELL LLP
Telephone: (215) 569-5500                          125 Broad Street
shannon.mcclure@blankrome.com                      New York, New York  10004
                                                   Telephone: (212) 558-4000
                                                   giuffrar@sullcrom.com
                                                   reind@sullcrom.com
                                                   malkinaj@sullcrom.com
                                                   bradyg@sullcrom.com

                                                   *Counsel for Defendant Evolution AB (publ)*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2025, the foregoing document was electronically filed with the Clerk of the Court and served upon counsel of record through the Court's ECF filing system.

/s/ *David M.J. Rein*
David M.J. Rein (admitted *pro hac vice*)